COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-066-CV

DENTON COUNTY, TEXAS APPELLANT

V.

DIANNE BEYNON AND ROGER APPELLEES

BEYNON, INDIVIDUALLY AND AS

NEXT FRIENDS OF RHIANNON

BEYNON, A MINOR

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Denton County, Texas (“Denton”) brings this accelerated, interlocutory appeal from the trial court’s order denying its plea to the jurisdiction on the special defect claim of Appellees Dianne Beynon and Roger Beynon, individually and as next friends of Rhiannon Beynon, a minor (“Beynon”).  
See 
Tex. Civ. Prac. & Rem. Code Ann.
 § 51.014(a)(8) (Vernon Supp. 2007).  In three issues, Denton complains that the trial court erred by denying its plea to the jurisdiction because Denton is immune from Beynon’s suit.  
Because we hold that Beynon invoked the trial court’s subject matter jurisdiction by establishing a waiver of Denton’s governmental immunity under the Texas Tort Claims Act (“TTCA”), we will affirm.  
See id
. §§ 101.021(2), 101.025(a) (Vernon 2005).

II.  Factual and Procedural Background

On October 17, 2004, Rhiannon Beynon was a passenger in the backseat of a car traveling at approximately thirty-five miles per hour along an unlit and undivided two-lane roadway with unimproved shoulders in Denton County.  It was dark at the time, and the driver, Mark Hilz, moved the car to the edge of the roadway when he observed an oncoming vehicle driving in the center of the road with its bright lights on.  As Hilz moved the car over, it dropped off the edge of the pavement, slid sideways, left the roadway, and punctured itself on the arm of a floodgate owned and maintained by Denton.  The floodgate arm, which is a metal pole that measures approximately seventeen feet long, is attached to a metal base buried in the ground beside the roadway, and can swing in either direction, was unsecured and facing in the wrong direction (into oncoming traffic).  The tip of the floodgate arm was positioned approximately three feet from the edge of the roadway when it contacted the car—tearing through the driver’s side door, part of the driver’s side front seat, Rhiannon’s leg, and the floorboard of the passenger compartment where Rhiannon was sitting.  Rhiannon’s leg was later amputated below her knee.

Beynon sued Denton for the injuries that she sustained in the accident, claiming that Denton was negligent and that the floodgate arm constituted either a premise defect or a special defect for which Denton had waived its immunity from suit pursuant to the applicable provisions of the TTCA.  As to the special defect claim, Beynon alleged in part that the floodgate arm “presented a threat to vehicular passengers and other ordinary users of the roadway,” that Denton “failed in its duty to exercise ordinary care in maintaining the pole in a way to protect [Beynon] from the danger” even though Denton “knew or should have known of the unreasonable risk posed by the gate and pole,” and that Denton failed to adequately warn of the condition’s existence and make the condition reasonably safe.

Denton answered and filed a plea to the jurisdiction in response to Beynon’s petition.  Denton asserted that Beynon’s pleadings and claims do not fall within the TTCA’s limited waiver of governmental immunity from suit for personal injuries caused by a premise defect or special defect.  As part of the supplemental brief to its plea to the jurisdiction, Denton attached excerpts from the depositions of Hilz, Roger and Dianne Beynon, and Mike Burton, a Denton County Road and Bridge Department foreman.  Beynon filed a response to Denton’s plea to the jurisdiction, which included excerpts from the depositions of Jim Carter, the County Commissioner for precinct four of Denton County, Burton, and Hilz, affidavits of Carter and Andrew D. Irwin, an accident investigator and reconstructionist, and photographs of the accident scene and vehicle.  The trial court ultimately granted Denton’s plea to the jurisdiction on Beynon’s premise defect and negligence claims but denied the plea as to the special defect claim.  This interlocutory appeal followed.

III.  Waiver of Governmental Immunity

In three issues, Denton argues that the floodgate arm is not a special defect and that Beynon failed to raise fact questions regarding whether Denton knew or should have known that the floodgate arm was unsecured and whether Denton failed to exercise ordinary care to protect Beynon from the floodgate arm.

A. Standard of Review

A county’s immunity from suit defeats a trial court’s subject matter jurisdiction; thus, it is properly asserted in a plea to the jurisdiction.  
See Tex. Dep’t of Parks & Wildlife v. Miranda
, 133 S.W.3d 217, 225-26 (Tex. 2004).  A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit.  
Bland ISD v. Blue
, 34 S.W.3d 547, 554 (Tex. 2000).  Whether the trial court had subject matter jurisdiction is a question of law that we review de novo.  
Tex. Natural Res. Conservation Comm’n v. IT-Davy
, 74 S.W.3d 849, 855 (Tex. 2002).

The plaintiff has the burden of alleging facts that affirmatively establish the trial court’s subject matter jurisdiction.  
Tex. Ass’n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 446 (Tex. 1993).  We construe the pleadings liberally in favor of the plaintiffs, look to the pleader’s intent, and accept the pleadings’ factual allegations as true.  
Miranda
, 133 S.W.3d at 226.  If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues.  
Id
. at 227; 
Bland ISD
, 34 S.W.3d at 555.  A trial court’s review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a traditional motion for summary judgment.  
Miranda
, 133 S.W.3d at 228; 
see also 
Tex. R. Civ. P.
 166a(c).  If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder.  
Miranda
, 133 S.W.3d at 227-28.  But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.  
Id
. at 228.

Here, Denton has challenged both Beynon’s pleadings and the existence of jurisdictional facts.  Thus, we must examine the evidence submitted by the parties to determine if Beynon raised a fact question regarding jurisdiction.  
See id
.

B. Special Defect and Governmental Immunity

Under the TTCA, a governmental unit’s immunity from suit is waived to the extent that the TTCA creates liability.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.025(a); 
State ex rel. State Dep’t of Highways & Pub. Transp. v. Gonzalez
, 82 S.W.3d 322, 326 (Tex. 2002).  A governmental unit may be liable for personal injuries caused by a condition of real property if the governmental unit would, were it a private person, be liable under Texas law.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.021(2).  The standard of care that must be exercised by a governmental unit depends on whether the condition is classified as a premise defect or a special defect.  
Id
. § 101.022(a), (b) (Vernon Supp. 2007); 
State Dep’t of Highways v. Payne
, 838 S.W.2d 235, 237 (Tex. 1992).  If the condition is a special defect, then Denton owed Beynon the same duty that a private landowner owes an invitee, which requires a landowner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition of the premises of which the owner is or reasonably should be aware.  
See Payne
, 838 S.W.2d at 237.

The determination of whether a condition is a special defect is a question of law for the court to decide.  
State v. Burris, 
877 S.W.2d 298, 299 (Tex. 1994).
  Special defects include excavations or obstructions on highways, roads, or streets.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.022(b); 
Payne
, 838 S.W.2d at 238.  Courts have generally characterized special defects as unexpected and unusual dangers to ordinary users of the roadway.  
Payne
, 838 S.W.2d at 238.  However, a defect need not occur upon the road surface itself to constitute a special defect if it is close enough to present a threat to the normal users of the road.  
Peterson v. City of Fort Worth
, 966 S.W.2d 773, 775 (Tex. App.—Fort Worth 1998, no pet.); 
Morse v. State
, 905 S.W.2d 470, 474-75 (Tex. App.—Beaumont 1995, writ denied); 
see also Payne
, 838 S.W.2d at 238 n.3.  But a condition located so far from the roadway that vehicular passengers and other normal users of the roadway are unlikely to encounter it is not a special defect.  
Tex. Dep’t of Transp. v. Andrews
, 155 S.W.3d 351, 356 (Tex. App.—Fort Worth 2004 , pet. denied).  A special defect must be something out of the ordinary course of events or distinguished by some unusual quality rather than a longstanding, routine, or permanent condition.  
Id
. at 356-57; 
Wildermuth v. Parker County
, 1 S.W.3d 705, 708 (Tex. App.—Fort Worth 1999, no pet.).  The supreme court has held that the examples included in the TTCA—excavations and obstructions—are not exhaustive and has construed special defects to include other defects of the same kind or class.  
City of Grapevine v. Roberts
, 946 S.W.2d 841, 843 (Tex. 1997).

1.
 
The Floodgate Arm is a Special Defect 

In its first issue, Denton argues that the floodgate arm is not a special defect because it is not an excavation, obstruction, or other similar condition and because it did not present an unexpected or unusual danger to ordinary users of the roadway since it was located “far enough from the paved surface that normal users of the roadway were unlikely to encounter it.”  We disagree.   Beynon’s jurisdictional evidence included multiple high quality photographs of the location where the accident occurred.  The photographs depict the road where the accident occurred, the size of the road, the shoulders on each side of the road, the base to which the floodgate arm is attached and its proximity to the roadway, and the floodgate arm itself.  There is also a photograph taken after the accident occurred that shows the crashed vehicle in its final resting spot.

The photographs and other relevant jurisdictional evidence show that the road where the accident occurred is a two-lane road with unimproved shoulders.  The unimproved shoulders consist mostly of weeds, grasses, and trees.  There is also a fence line following nearby along the side of the shoulders that is not abutting the surface of the road.  There are no “frontage,” side, or alternative roads alongside of the roadway.  When used properly, the floodgate arm swings out over the road to block traffic in the event of a nearby flood over or near the road.  At the time of the accident, however, the floodgate arm was unsecured and facing oncoming traffic with the tip positioned approximately three feet from the edge of the roadway.  Three feet from the edge of a road—even a road with unimproved shoulders—is a relatively small distance.  Indeed, a vehicle that pulls completely over onto an 
improved 
shoulder must travel a distance greater than three feet from the edge of the portion of the road where the vehicle normally drives.  And although a normal user of the road in this case is going to drive on the paved surface almost the entire time that he or she uses the road (because the shoulder is unimproved and not conducive to driving a street vehicle thereon), it is certainly not inconceivable that a normal user of the road might pull off or leave the edge of the road onto the unimproved shoulder for one reason or another, either intentionally or accidentally.  Thus, considering (1) that the road is a two-lane road with an unimproved shoulder, (2) that, aside from the unimproved shoulder, a normal user of the road has nowhere else to drive his or her vehicle but on the paved roadway, and (3) that the tip of the floodgate arm was positioned only about three feet off the edge of the roadway when Beynon’s car contacted it, we cannot say that the floodgate arm was so far from the road that vehicular passengers and other normal users of the road were unlikely to encounter it.  Rather, the floodgate arm, which is an instrument intended to block traffic on the road and, thus, is related to the roadway, was close enough to the road that it presented a threat to normal users of the road.

Further, a floodgate arm that is positioned in such a way that the tip is located approximately three feet from the edge of a road such as the one in this case is a condition that an ordinary user of the roadway would find unexpected and unusually dangerous.  Hilz’s deposition testimony evidences this point precisely.  He testified that, as the car slid out of control and was about to hit a clump of trees on the side of the road, he thought that he would merely have to repair the damage to the vehicle and pay a large deductible.  He testified as follows:

The thing that I recall is seeing a small clump of trees that we were heading for . . . .  And the only thing I was thinking to myself at the time is: Darn, you know, I just screwed up the car; I’m about to screw up the car; we’re going to hit this clump of trees.

But I had no concern about physical, being physically hurt because the speed wasn’t that great.  You know, when you’re in an accident, you can tell whether you’re physically going to be harmed or you’re more concerned about damages to the car and you’re going to get really ticked off that you’re going to have to now, you know, make an insurance claim and have damage and you got to do the deductible.

So I can remember it just passing through my brain very quickly that here it goes, there’s another thousand-dollar deductible . . . .

But after the vehicle came to a stop, Hilz realized that Rhiannon had sustained a serious injury to her leg.  He testified as follows:

Rhiannon in the back seat shortly after we came to a stop started screaming about her foot.  And I was thinking maybe her foot got jammed up beneath my seat.  I couldn’t comprehend at - - you know, I was trying to put things together.

And I was like, well, gosh, maybe she broke her an[k]le or maybe her foot’s under my seat or something.  I really didn’t understand what was going on.  So I said, “Well, Rhiannon, let me see, you know, let me see your foot.”  Because I was thinking maybe her foot, her an[k]le was broken.

And she went to put her foot up on the center console in between us and I looked over and I notice[d] and I saw obviously that there was no foot.

Considering this testimony, Hilz later testified predictably that he thought it unexpected and unusual to find the floodgate arm pointing towards him.  Thus, just as Hilz’s deposition testimony demonstrates that he found it unexpected and unusual that the floodgate arm was unsecured and facing in the wrong direction with the tip positioned in such close proximity to the road, a normal user of the road who departs a mere three feet from the edge of the roadway would find it unusual and unexpected to have his or her vehicle impaled upon a seventeen foot metal pole that was facing oncoming traffic and positioned approximately three feet from the edge of the roadway.  Consequently, we hold that the floodgate arm constituted a special defect of the kind covered by the TTCA and that Denton waived its immunity from suit on this issue.  
See 
Tex. Civ. Prac. & Rem. Code Ann.
 § 101.022(b); 
Payne
, 838 S.W.2d at 238; 
Peterson
, 966 S.W.2d at 775.  We overrule Denton’s first issue.

2. Denton’s Knowledge and Ordinary Care

In its second and third issues, Denton argues that even if the floodgate arm is a special defect as that term is defined, it did not waive its immunity from suit because it did not have actual or constructive knowledge that the floodgate arm was unsecured and because it exercised ordinary care to protect Beynon from the danger.

Beynon argues that Denton waived these issues by failing to raise them in the trial court.  We decline to entertain Beynon’s preservation argument, however, because Denton is challenging the trial court’s subject matter jurisdiction.  Because subject matter jurisdiction is essential to the authority of a court to decide a case, it can never be presumed and cannot be waived.  
See Tex. Ass’n of Bus., 
852 S.W.2d at 443-44; 
but see City of Dallas v. VSC, LLC
, 2006 WL 1688440, at *8 (Tex. App.—Dallas 2006, no pet.) (holding that appellant failed to preserve for appellate review argument not raised in trial court).  Therefore, we will address Denton’s second and third issues.

To establish liability for a tort claim arising from a special defect under the TTCA, a plaintiff must show that (1) a condition of the premises created an unreasonable risk of harm to the invitee, (2) the owner knew (actual knowledge) or reasonably should have known (constructive knowledge) of the condition, (3) the owner failed to exercise ordinary care to protect the invitee from danger, and (4) the owner’s failure was a proximate cause of injury to the invitee.  
Payne
, 838 S.W.2d at 237
; 
Stokes v. City of San Antonio
, 945 S.W.2d 324, 326 (Tex. App.—San Antonio 1997, no writ).  It has long been the rule that a premises owner is considered to have constructive knowledge of any dangerous condition that a reasonably careful inspection would reveal.  
Corbin v. Safeway Stores, Inc.
, 648 S.W.2d 292, 295 (Tex. 1983); 
Sanmina-SCI Corp. v. Ogburn
, 153 S.W.3d 639, 642 (Tex. App.—Dallas 2004, pet. denied).  A fact issue regarding a governmental unit’s actual or constructive knowledge of a special defect may exist if the evidence demonstrates that the condition existed for a substantial period of time.  
See Harris County v. Eaton
, 573 S.W.2d 177, 180 (Tex. 1978).  A defendant fails to exercise ordinary care to protect the plaintiff from danger when the defendant fails to adequately warn the plaintiff of the condition and fails to make the condition reasonably safe.  
State v. Williams
, 940 S.W.2d 583, 584 (Tex. 1996). 

Here, Denton submitted evidence that Hilz and Roger and Dianne Beynon did not have any evidence or information that Denton had been notified of the condition before the accident.  Burton testified that it was never Denton’s intention to leave the floodgate arm facing in the wrong direction, that Denton employees monitored the area for unsecured floodgate arms, and that a repair log kept by Denton used to document maintenance performed on the floodgates did not indicate that there had been any chains or padlocks repaired or replaced on the floodgate involved in the accident.  Denton further asserts in its brief that Beynon did not allege or produce any evidence that the floodgate had been unsecured for a substantial amount of time.

Beynon, however, responded with evidence that Denton knew that the floodgates had become unsecured.  Burton, Denton’s County Road and Bridge Department foreman, testified that people cut the chains securing the floodgates in the closed position “every time we have high water” because the drivers do not want to detour around the closed road.  Burton stated that children also cut the chains and pull the gates out over the road “for fun and pranks.”  Burton testified that Denton employees, aware that the gates become unsecured, drive along the road and through the area maybe once a week to check the floodgates.  Hilz agreed that since the time of the accident he had heard complaints that the floodgate arm involved in this case “had routinely been left loose and that the County had neglected it and not gone back to lock it.”  He testified without objection that he became aware of the complaints “in talking with other neighbors about that particular arm and about not just that particular arm but there’s multiple other arms around that intersection and that other neighbors had noticed it and always were concerned.”  And Burton agreed that “if the procedures had been followed properly, [the floodgate arm] should have been locked up facing the other direction.”

The plea to the jurisdiction evidence raises an inference that the unsecured condition of the floodgate arm either existed for a substantial period of time or existed for a period of time such that the condition would have been revealed through a reasonably careful inspection.  
See 
Corbin
, 648 S.W.2d at 295; 
Eaton
, 573 S.W.2d at 180.
  Indeed, 
a few photographs of the floodgate taken on November 4, 2004 (over two weeks after the accident occurred) show that the floodgate arm was still not secured by a lock or chain, as Denton claims is the normal method of securing the arms.
(footnote: 1)  Beynon did not present evidence raising a fact question that Denton actually knew that the floodgate arm was unsecured.  However, we hold that Beynon controverted Denton’s plea to the jurisdiction evidence by presenting evidence raising a fact question as to whether Denton had constructive knowledge, and therefore should have known, that the floodgate arm was unsecured.  
See Miranda
, 133 S.W.3d at 227-28.  Accordingly, we overrule Denton’s second issue.

Considering Burton’s testimony that the floodgate arm should have been secured and facing in the other direction if Denton’s procedures had been followed properly, Hilz’s testimony that he had no idea before the accident occurred that the floodgate arm was pointing towards oncoming traffic, and the other jurisdictional evidence above, we hold that Beynon raised a fact question as to whether Denton exercised ordinary care to protect Beynon from the danger of the unsecured floodgate arm.  
See id
.; 
Williams
, 940 S.W.2d at 584.  
Accordingly, we overrule Denton’s third issue.

IV.  Conclusion

Having overruled all of Denton’s issues, we affirm the trial court’s order denying Denton’s plea to the jurisdiction on Beynon’s special defect claim.

DIXON W. HOLMAN

JUSTICE

PANEL A:  HOLMAN, GARDNER, and MCCOY, JJ.

DELIVERED:  November 29, 2007

FOOTNOTES
1:
The photographs show that the floodgate arm is apparently secured by a thin type of wire.