DENTON COUNTY, Texas, Petitioner,

v.

Dianne BEYNON and Roger Beynon,
Individually, et al., Respondents.

No. 08–0016.

Supreme Court of Texas.

May 1, 2009.

William W. Krueger III, Casey Sean Erick, Martin, Disiere, Jefferson & Wisdom, L.L.P., Dallas, TX, for Petitioner.

James L. Mitchell, Payne Mitchell Law Group, Dallas TX, for Respondent.

Justice WILLETT delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice BRISTER, Justice GREEN, and Justice JOHNSON joined.

In this premise-liability case, we decide whether a seventeen-foot floodgate arm located approximately three feet off a two-lane rural roadway is a "special defect" under the Texas Tort Claims Act (TTCA). We hold the floodgate arm does not meet the TTCA's narrow definition of a special defect. Accordingly, we reverse the court of appeals' judgment and dismiss the case.

Rhiannon Beynon, a minor, was a backseat passenger in a car traveling at night along Old Alton Road—an unlit, undivided two-lane roadway in Denton County. When driver Mark Hilz noticed an oncoming vehicle approaching in the middle of the road with its bright lights on, he moved his car to the far right side of the road, which had a steep pavement edge drop-off. His right-side tires then left the asphalt, dropping "around eight inches" off the edge and into some loose gravel and grass. The car briefly climbed back onto the road, but Hilz had lost control, and the car slid sideways into the grass where it was punctured by a seventeen-foot floodgate arm owned and maintained by Denton County.

The metal floodgate arm was unsecured and improperly pointed toward oncoming traffic,[1] with the tip of the arm about three

---

1. It was the normal practice of Denton County to secure the floodgate arm with a lock and chain and point it away from oncoming traffic. Denton County does not dispute that the floodgate arm was unsecured and facing the wrong direction. Rather, it contends that even in this position, the floodgate arm was not a special defect as a matter of law.

feet from the edge of the roadway. The floodgate arm pierced the driver's side door and then entered the backseat area where it severely injured Rhiannon Beynon's leg before passing through the floorboard beneath her seat. Diane and Roger Beynon, individually and as Rhiannon's next friend, sued Denton County on premise-defect and special-defect theories of liability.

The trial court granted Denton County's plea to the jurisdiction on the premise-defect claim but not on the special-defect claim, prompting Denton County to challenge the latter ruling via interlocutory appeal.[2] The court of appeals affirmed the trial court's judgment, holding the floodgate arm to be "a condition that an ordinary user of the roadway would find unexpected and unusually dangerous."[3] Because the court of appeals' decision conflicts with our precedent as described below, we have jurisdiction to decide whether the County's plea should have been granted on the special-defect claim.[4]

■ The TTCA does not define "special defect" but likens it to "excavations or obstructions" that exist "on" the roadway surface.[5] The existence of a special defect is a question of law that we review de novo.[6] Where a special defect exists, the State owes the same duty to warn as a private landowner owes to an invitee,[7] one that requires the State "to use ordinary care to protect an invitee from a dangerous condition of which the owner is or reasonably should be aware."[8]

■ This Court has never squarely confronted whether a hazard located off the road can (or can never) constitute a special defect, though we did note in *Payne* that some courts of appeals have held certain off-road conditions to be special defects.[9] However, as *Payne* clarified, "[w]hether on a road or near one,"[10] conditions can be special defects like excavations or obstructions "only if they pose a threat to the ordinary users of a particular roadway."[11] More specifically, a court cannot "classify as 'special' a defect that is not like an excavation or obstruction on a

2. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(8).

3. 242 S.W.3d 169, 175.

4. Tex. Gov't Code §§ 22.001(a)(2), 22.225(c).

5. Tex. Civ. Prac. & Rem.Code § 101.022(b).

6. *State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993) (per curiam).

7. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992).

8. *Id.*

9. *Id.* at 238–39 n. 3.

10. *Id.* at 238 n. 3.

11. *Id.* A 1999 per curiam opinion from this Court appeared to add a second element to the definition, stating "[a] special defect must be a condition of the same kind or class as an excavation or roadway obstruction *and* present 'an unexpected and unusual danger to ordinary users of roadways.'" *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex.1999) (per curiam) (citation omitted) (emphasis added). The TTCA itself says nothing about "unexpected and unusual danger." That phrase first appeared in 1992 in *Payne*. In that case, we observed that excavations and obstructions "present an unexpected and unusual danger to ordinary users of roadways." *Payne*, 838 S.W.2d at 238. The TTCA mandates no second prong, nor does *Payne* engraft one; the statutory test is simply whether the condition is of the same class as an excavation or obstruction. We used "unexpected and unusual danger" in *Payne* to *describe* the class, not to *redefine* it. Nor does the case upon which *Payne* rests, *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex.1978), mandate that the condition, besides being like an excavation or obstruction, also pose an unexpected and unusual danger to ordinary roadway users.

roadway." [12]

The floodgate arm that injured Rhiannon Beynon is not of the same kind or class as an excavation or obstruction, nor did it pose a threat to "ordinary users" in the manner that an excavation or obstruction blocking the road does. It thus falls outside the TTCA's narrow special-defect class as a matter of law. The Beynons contend the floodgate arm is an obstruction "[b]y definition and by its very nature" because "[i]ts sole intended purpose is to obstruct vehicular traffic." This would be true had the arm been set in the roadway in a closed position to block traffic, but here it was in a resting position roughly three feet off the roadway, albeit unsecured and facing the wrong direction. Even still, the arm did not "pose a threat to the ordinary users of [Old Alton Road]," [13] or prevent ordinary users from traveling on the road (as opposed to skidding off the road). Our cases rest on the objective expectations of an "ordinary user," and such a driver would not be expected to careen uncontrollably off the paved roadway and into the adjoining grass, as Hilz admitted when he stated that the "normal course of travel for [Old Alton Road] would be the asphalt pavement."

In any case, the arm was neither the condition that forced Hilz's car off the road initially nor the condition that caused the car to skid sideways and crash into the floodgate arm. The record is clear that Hilz completely lost control of the vehicle when he tried to navigate what he called a "fairly steep drop" along the road's edge and reenter the pavement. He testified that prior to the impact, he "didn't have any control of the car," that the car "was simply sliding sideways at a 45-degree angle" toward a clump of trees, and that the car came to rest in the trees after striking the floodgate arm.

The dissent stresses that few off-road conditions would qualify as special defects but "the particular circumstances presented in this case" qualify because the floodgate arm was unexpected and posed an unusual danger to ordinary travelers. First, the TTCA speaks of "special defects such as excavations or obstructions" that impede travel on the roadway. This condition was not of the same kind or class as those cited in the TTCA. Second, the TTCA does not posit an alternative basis for special-defect liability when a condition, while not an excavation or obstruction, is out of the ordinary. [14] We understand the dissent's sentiments but do not believe they track the statute or afford much bright-line guidance, particularly in light of our focus on "ordinary users" and our requirement that immunity waivers be clear and unambiguous. [15]

---

**12.** *Payne*, 838 S.W.2d at 239 n. 3 (disapproving of cases "when the defect did not present a hazard to the ordinary users of a roadway").

**13.** *Id.*

**14.** A per curiam decision from 1993, the year after *Payne* was decided, suggests that a special defect can be *any* condition that poses an unexpected and unusual danger, even if it is not an excavation or obstruction. *State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993) (per curiam) ("Special defects are excavations or obstruc-

tions, or other conditions which 'present an unexpected and unusual danger to ordinary users or roadways.' ") (quoting *Payne's* description of how excavations and obstructions pose such hazards) (citations omitted). But waiving immunity for "other conditions," however uncommon, departs from the text's explicit focus on "excavations or obstructions."

**15.** Besides the fact that a condition's unexpectedness is not a stand-alone basis for bringing a special-defect claim, such unexpectedness seems to matter little when a driver, as in this case, cannot steer the vehicle

■ The injuries sustained by Rhiannon Beynon are unquestionably tragic; however, it is the province of the Legislature, not the courts, to prescribe the parameters of premise- and special-defect claims.[16] The trade-offs inherent in governmental immunity are a uniquely legislative matter, and the Legislature has specifically limited special defects to conditions "such as excavations or obstructions on highways, roads, or streets."[17] Accordingly, we decline to expand the statutory definition beyond its terms.[18]

Because the floodgate arm was not a special defect, we grant the petition for review and without hearing oral argument,[19] reverse the court of appeals' judgment and dismiss the case.

Justice O'NEILL filed a dissenting opinion, in which Chief Justice JEFFERSON and Justice MEDINA joined.

Justice O'NEILL, joined by Chief Justice JEFFERSON and Justice MEDINA, dissenting.

It is hard to imagine anything more dangerous than a seventeen-foot metal pole pointing like a spear in the direction of oncoming traffic. The Court doesn't appear to disagree. It concludes, however, that ordinary users of the roadway are not expected to veer off the asphalt pavement, so anything they might encounter if they do cannot be a special defect. I would agree with the Court if the particular hazard were farther from the road than the metal pole that impaled the plaintiff's vehicle here. But departing a mere three feet from the road to avoid a collision is not out of the ordinary, and the floodgate arm's close proximity to the road's edge posed a threat that normal users of the road would not expect. Because the Court concludes otherwise, I respectfully dissent.

Rhiannon Beynon was a passenger in the backseat of a vehicle driven by Mark Hilz. While driving on Old Alton Road in

and is skidding uncontrollably. The dissent's approach also invites several follow-up questions—for example, who decides unexpectedness; is the test objective or subjective? Also, if this unsecured floodgate arm were positioned eight feet from the road's edge rather than three, would that extra sixty inches immunize the county? *See City of Dallas v. Giraldo*, 262 S.W.3d 864, 871–72 (Tex.App.-Dallas 2008, no pet.) (parked bulldozer eight to ten feet from the roadway edge is not a special defect). Or if the floodgate arm had been unsecured and pointed like this for years without incident—would that longstandingness cancel out any unexpectedness? We suspect the dissent would say it depends, that each case is different. True, each case has unique facts, but our decisions should aim for predictability that applies uniformly beyond the case at hand.

**16.** *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996) ("we must look to the terms of the [TTCA] to determine the scope of its waiver"); *Giraldo*, 262 S.W.3d at 869 ("The *Legislature* has provided a limited waiver of immunity for … special defect claims under the Texas Tort Claims Act.") (emphasis added).

**17.** Tex. Civ. Prac & Rem Code § 101.022(b).

**18.** The dissent asserts that our notion of an " 'ordinary user' limits special defects to those that appear only within the lines between the shoulders of the road." at ——. While the TTCA by its terms speaks of "excavations or obstructions *on* highways, roads, or streets," Tex Civ. Prac. & Rem.Code § 101.022(b) (emphasis added), none of our previous cases grapples squarely with whether an off-road hazard can constitute a special defect, and we need not decide that issue today. Fact patterns obviously vary from case to case, but we are confident in holding that the complained-of condition in today's case—a floodgate arm located in a grassy area alongside a rural county road—does not constitute a special defect as a matter of law.

**19.** Tex R.App. P. 59.1.

Denton County, Hilz observed an oncoming vehicle with its brights on driving down the center of the road. To avoid the oncoming car, Hilz steered his vehicle toward the edge of the road. As Hilz moved his car over, the right tires left the pavement and dropped about eight inches onto the unpaved, unimproved shoulder. Hilz quickly turned his wheels to the left and returned to the road briefly. But in his attempt to correct the path of the car, he lost control. Hilz turned the car left and then tried to correct by turning to the right. When he turned back to the right, the front wheels left the road and the car's undercarriage caught the edge of the pavement. The vehicle began to slide along the road at a forty-five degree angle with its rear wheels still on the pavement. While the car slid along the pavement, a floodgate arm punctured the driver's door. In its proper position the floodgate arm, a seventeen-foot metal pole attached to a base buried in the ground, would have been facing away from traffic and secured in place. However, the arm was unsecured and improperly pointing toward oncoming traffic when Hilz's car collided with it three feet from the pavement. The arm penetrated the driver's door, pierced Rhiannon's leg, and exited through the floorboard. The car stopped its slide at the base of the floodgate. Hilz did not see the floodgate arm or realize that the car had collided with it until he heard Rhiannon's screams. Rhiannon's injuries resulted in amputation of her leg below the knee.

The Court does not dispute that the floodgate arm was in the wrong position, that the floodgate arm impaled the vehicle [1], or that its open position was unexpected and dangerous. The Court concludes, however, that because Hilz veered three feet from the asphalt, he was no longer an ordinary user of the road and Denton County's plea to the jurisdiction should have been granted. I disagree.

Special defects are "defects of the same kind or class as 'excavations or obstructions on highways, roads, or streets' that present an 'unexpected and unusual danger to ordinary users of roadways.'" *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex.2008) (citation omitted). To be a special defect, the condition must also "unexpectedly and physically impair a car's ability to travel on the road." *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex.1999). A special defect need not occur on the surface of a road, but "[w]hether on a road or near one, ... conditions can be [special defects] only if they pose a threat to the ordinary users of a particular roadway." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 n. 3 (Tex.1992).

The Court concludes the floodgate arm is not a special defect because it was not blocking the road and the objective expectations of an "ordinary user" would not include veering off the road and onto the grass. But "ordinary users" of roads sometimes stray outside the lines, else there would be no need for shoulders. In my view, vehicle operators do not cease to be ordinary users every time they veer

---

1. The Court summarily concludes that the floodgate arm "is not of the same kind or class as an excavation or obstruction...." It is hard to envision a more significant obstruction than a seventeen-foot metal pole piercing a vehicle's door and floorboard. Moreover, as we have noted, "The examples in the statute are not exclusive, and courts are to construe 'special defects' to include defects of the same kind or class as the ones expressly mentioned in the statute." *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex.1997). In my view, a metal pole that pierced a vehicle, preventing it from traveling farther down the road, is similar enough to an obstruction to fall within the statute's ambit.

onto a shoulder. As the court of appeals observed, normal users of the road nearly always drive on the paved surface, yet "it is certainly not inconceivable that a normal user of the road might pull off or leave the edge of the road onto the unimproved shoulder for one reason or another, either intentionally or accidentally." 242 S.W.3d at 174. In the ordinary course of driving, hazards like road debris, livestock, or other drivers who don't respect their lanes are often encountered that require prudent drivers to take advantage of the shoulder, whether improved or unimproved. The Court's conclusion that a driver was no longer an ordinary user because two of his tires left the roadway as the result of his efforts to escape a head-on collision is inconsistent with what objectively reasonable drivers do every day.

The Court recognizes that the test for determining the expectations of an ordinary user is an objective one. Yet it fails to conduct an objective analysis, citing only Hilz's statement that "the 'normal course of travel for [Old Alton Road] would be the asphalt pavement.'" Hilz's testimony merely states the obvious: users of the road normally drive on the paved surface. That doesn't mean veering three feet from the asphalt to avoid a collision, with two wheels still on the road, places a driver beyond the normal course of travel. The Court's concept of "ordinary user" limits special defects to those that appear only within the lines between the shoulders of the road, contrary to our acknowledgment in *Payne* that a number of courts have recognized that "conditions threatening normal users of a road may be special defects even though they do not occur on the surface of a road." 838 S.W.2d at 238 n. 3 (citations omitted); *see, e.g., Harris County v. Estate of Ciccia*, 125 S.W.3d 749, 754–55 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (holding that a culvert yards beyond the road's end where a "right-turn

only" lane directed traffic is a special defect); *see also Tex. Dep't of Transp. v. Dorman*, No. 05–97–00531–CV, 1999 WL 374167 at *2–4 (Tex.App.-Dallas June 10, 1999, pet. denied); *Morse v. State*, 905 S.W.2d 470, 474–76 (Tex.App.-Beaumont 1995, writ denied).

Not all off-road objects a driver might encounter in the ordinary course of travel qualify as special defects; to the contrary, few do. Obstructions like road signs, construction equipment in marked construction zones, and properly secured floodgate arms are not unexpected and do not pose an unusual danger to ordinary travelers. *See City of Dallas v. Giraldo*, 262 S.W.3d 864, 871 (Tex.App.-Dallas 2008, no pet.) (holding that a bulldozer parked eight to ten feet off the edge of the road is "not of the same kind or class as the excavations or obstructions the statute contemplates" and "did not pose a threat to the ordinary users of the roadway"); *Harris County v. Smoker*, 934 S.W.2d 714, 719 (Tex.App.-Houston [1st Dist.] 1996, writ denied) ("[A] longstanding, routine, or permanent condition is not a special defect."). But an unsecured floodgate arm pointing directly at oncoming traffic a mere three feet from the road's edge is out of the ordinary, unexpected, and extremely dangerous to ordinary users of the roadway.

Under the particular circumstances presented in this case, I consider the floodgate arm a special defect and would affirm the court of appeals' judgment. Because the Court does not, I respectfully dissent.