Opinion filed May 22, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00064-CV

_____

## TEXAS DEPARTMENT OF TRANSPORTATION, Appellant

## V.

## TERESA RENEE ABILA LOPEZ ET AL., Appellees

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. CV-11-42376**

### O P I N I O N

This case arises from a vehicle accident in which a motorist struck and killed a tow-truck driver who was working to upright a Budget Rental moving truck. The truck rolled over and was in the median of Interstate Highway 20 at the time of the accident.

Appellees Teresa Renee Abila Lopez, individually and as next friend of Gabriella Jolie Abila Lopez, a minor child; Rachel Lopez, individually and as

representative of the Estate of Adam Diaz Lopez, Jr.; and Adam Diaz Lopez, Sr. sued the Texas Department of Transportation (TxDOT) and several others who are not parties to this appeal. After discovery, TxDOT filed, in one document, a motion for summary judgment in which it alleged both traditional and no-evidence grounds. In its motion, TxDOT challenged the trial court's subject-matter jurisdiction on the grounds of sovereign immunity. The trial court denied the motion but did not state the reasons for the denial. We affirm in part and reverse and render in part.

The facts in this case are tragic. Ronnie Lynn Sibley was moving from Arizona to Louisiana and was driving a rented Budget moving truck eastbound along Interstate 20 in a construction zone. He entered the construction zone and felt the weight of his cargo shift. In response, Sibley applied the brakes on the truck, and the truck began to fishtail. In the construction zone, the outside lane for eastbound traffic had been closed, leaving only the single twelve-foot wide inside lane. The outside lane and the inside lanes for eastbound traffic were separated by a concrete barrier. The truck hit the concrete barrier on the right, Sibley lost control, and the truck turned over into the median that separated eastbound traffic from westbound traffic; the median was to the left of the single lane for eastbound traffic. Sibley was not injured.

Emergency personnel and State Troopers Shannon Mauney and Buddy Wise arrived at the scene of the wreck. Tow trucks were dispatched there also from Mangum Wrecker Service and Freddy's Garage and Wrecker Service. Travis Rogers, the maintenance supervisor for TxDOT, also arrived on the scene.

Personnel of the tow-truck companies, including the decedent (Adam Diaz Lopez, Jr.), as well as Rogers, Trooper Mauney, and Trooper Wise, all discussed how to proceed to clear the wreck site, and then they began operations to recover the overturned truck from the median.

2

East of the accident site, TxDOT crews placed cones and funneled westbound traffic into the outside lane for westbound traffic. That action resulted in the closure of the inside lane for westbound traffic.

The two wreckers were parked in the then-closed inside lane for westbound traffic, closest to the accident site. Behind the wreckers in the inside lane of westbound traffic were Trooper Mauney's patrol vehicle, Trooper Wise's patrol vehicle, a box trailer to haul the contents of the wrecked Budget truck, and then a TxDOT vehicle with a flashing sign warning of the closed lane. The emergency lights on all the vehicles were on. Some hours later, and as the recovery operations were ongoing, Rosalind Evett Walker drove her husband's F-250 Ford pickup eastbound into the construction zone. When Walker neared the scene of the Budget truck recovery operations, she lost control of the pickup, swerved out of the eastbound lane of traffic into the median where the decedent was working, sideswiped the Budget truck, and hit the decedent. Walker jerked the wheel to the right, returned to the eastbound lane of the highway, hit the concrete barrier on the other side of that lane, and then continued traveling eastbound. Walker pulled over once she had exited the construction area, and the troopers followed her there. The decedent was taken by helicopter to a hospital where he died from the injuries he received when Walker's pickup hit him.

Trooper Mauney was the lead investigator for the first accident. On the night of the accident, Trooper Mauney talked with Sibley, and then he walked along the highway and inspected it. In his official accident report, Trooper Mauney stated that Sibley "hit a pothole in the road and lost control of the vehicle."

Trooper Wise was the official investigator for the second accident, and because it involved a fatality, he filed a Major Accident Investigation Report. Trooper Wise inspected the roadway on the night of the accident and again the

3

following day. In his deposition, Trooper Wise testified that new asphalt had just been laid and that the "bar [sic] ditch had not been pulled up to the edge of the road yet, so there was a drop-off on the inside lane" that was "at least five inches" and ran "[t]he entire length of the construction zone." Trooper Wise stated in his report:

> [Walker's] left front tire went off the roadway to the left which due to the construction was a steep drop off. Walker attempted to recover to the right and [her vehicle] started to skid to the left. While she was in the median she strikes [the Budget truck] and then strikes Lopez while he is working on [the Budget truck].

Trooper Michael Haley, a certified accident reconstructionist for the Texas Department of Public Safety, went to the scene of the accident. He marked the points on the road where Walker's tires left the road, traveled into the median, and reentered the roadway. Trooper Haley noted skid marks on the pavement and damage to the concrete barrier. He also observed that new asphalt had been laid, and he did not find a pothole or other defect on the surface of the road. In his deposition, Trooper Haley said that, when Walker's vehicle first left the roadway, it was "yawing" or rotating to the left. He said that, when a vehicle leaves a roadway and begins traveling on softer ground, "the vehicle is literally trying to move that direction and it will if she doesn't do something to correct it." In Trooper Haley's opinion, the drop-off from the road to the shoulder was tapered, and the cause of the accident was "unsafe speed and driver inattention."

Appellees alleged, among other things, that TxDOT was negligent in how it implemented traffic control and warning devices as part of the construction project and in how it failed to halt or redirect the flow of eastbound traffic after the first accident and also alleged several premises defects. Appellees also alleged that a pothole, a steep drop-off, and the first accident itself were special defects that gave rise to a duty to correct or warn motorists of the dangerous conditions.

4

We have jurisdiction to review an interlocutory order in which the trial court "grants or denies a plea to the jurisdiction by a governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(8), 101.001(3)(A) (West Supp. 2013). Both a plea to the jurisdiction and a motion for summary judgment are appropriate vehicles to challenge a trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

To prevail on a traditional motion for summary judgment, the movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or establish an affirmative defense as a matter of law. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Evidence is conclusive only if reasonable minds could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Siegler*, 899 S.W.2d at 197.

A party who seeks a no-evidence summary judgment asserts that there is no evidence of one or more elements of a claim on which the other party has the burden of proof at trial. TEX. R. CIV. P. 166a(i). If the nonmovant produces more than a scintilla of evidence that raises a genuine issue of material fact as to the challenged element, summary judgment is improper. *Id.* If reasonable, fair-minded people could differ in their conclusions, there is more than a scintilla of probative evidence. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). If the evidence creates no more than a mere surmise or suspicion, however,

5

there exists less than a scintilla of probative evidence. *Id.* We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We can only affirm summary judgment on grounds that were asserted in the motion. TEX. R. CIV. P. 166a(c).

To invoke the trial court's subject-matter jurisdiction, the plaintiff must allege facts that affirmatively demonstrate that the court has jurisdiction to hear it. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, a district court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. If a party challenges the existence of jurisdictional facts, we consider the evidence submitted by the parties to resolve the jurisdictional issue raised. *Id.* at 227 (citing *Blue*, 34 S.W.3d at 555). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28.

Sovereign immunity deprives a trial court of subject-matter jurisdiction over suits against the State or certain governmental units unless the State has consented to suit. *Id.* at 224. The issue in this case is whether the State waived immunity through the limited waiver provided for in the Texas Tort Claims Act (TTCA). *See* CIV. PRAC. & REM. §§ 101.001–.109 (West 2011 & Supp. 2013). We will first review the summary judgment evidence related to the claims that TxDOT was negligent when it implemented traffic control and warning devices in connection with the construction project. In its motion for summary judgment, TxDOT argued that this is a discretionary decision for which immunity is not waived under the TTCA.

6

The State retains its immunity for an act "if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." CIV. PRAC. & REM. § 101.056(2). A discretionary act requires the exercise of judgment; therefore, an act is not discretionary if it must be performed in a specific manner that leaves nothing to discretion or judgment. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). "Design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions." *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999) (citing *Villarreal v. State*, 810 S.W.2d 419, 422 (Tex. App.—Dallas 1991, writ denied)). The State also retains immunity for claims that arise from "the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit." CIV. PRAC. & REM. § 101.060(a)(1).

We initially determine that the trial court erred when it denied TxDOT's motion for summary judgment on the claims related to the design of the construction project and the use of traffic control and warning devices for the construction project. These are discretionary acts as a matter of law for which TxDOT retains immunity under the TTCA's discretionary function exception. *See* CIV. PRAC. & REM. § 101.056; *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *Rodriguez*, 985 S.W.2d at 85.

Appellees also alleged that TxDOT was negligent during the recovery operation because its employees "allowed traffic to continue to travel within yards of the [Budget] truck and workers." TxDOT argued in the trial court that it was not liable for actions stemming from the recovery operation because "no TxDOT personnel were involved in, nor were they directing, those recovery efforts" and because "the recovery operation was being conducted and supervised solely by employees of" the two tow-truck companies. In their summary judgment response,

7

Appellees offered testimony showing that TxDOT should have "posted warning signs, beacons and other appropriate traffic control devices" and diverted traffic "from the accident area and onto the eastbound frontage road."

Again, the TTCA does not waive immunity for a claim that arises from "the failure of a governmental unit to perform an act that the unit is not required by law to perform" or that is within "the discretion of the governmental unit." CIV. PRAC. & REM. § 101.056; *see* CIV. PRAC. & REM. § 101.060(a)(1). As discussed above, the decision about whether to implement signage is a discretionary act for which immunity is not waived. *See* CIV. PRAC. & REM. § 101.060(a)(1). The trial court erred when it denied TxDOT's motion for summary judgment on these claims.

Furthermore, as TxDOT argues, as to Appellees' claims related to the state and condition of the signage, Appellees presented no evidence as to either the state or the condition of any signage. Additionally, there is no proof that the state or condition of the signage was in the same class as an excavation or obstruction on a highway, road, or street. TxDOT argues that, even if it were, there was no evidence that it had notice of any kind and that there was no evidence as to the proximate cause attributable to any such defects. The trial court erred when it denied TxDOT's no-evidence motion for summary judgment in this regard.

We will now discuss Appellees' premises defect claims. The TTCA waives immunity, and a governmental entity is liable for, among other things, "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." CIV. PRAC. & REM. § 101.021(2).

Premises defects that exist under the provisions of Section 101.021(2) may be either ordinary premises defects or special defects. We apply different standards of care depending on whether the condition in question was an ordinary

8

premises defect or a special defect. *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010).

In an ordinary premises defect case, the government owes only the duty "that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." CIV. PRAC. & REM. §101.022(a); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). The duty owed to a licensee is that "a licensor of real property owes a duty not to injure the licensee by willful or wanton acts or omissions or gross negligence." *City of Denton v. Paper*, 376 S.W.3d 762, 766 (Tex. 2012). If the governmental entity has actual knowledge of a dangerous condition and the licensee does not, then the governmental entity must either warn the licensee or make the condition safe. *Id.*

On the other hand, when a special defect exists, a higher duty is placed upon the governmental entity: the same duty to warn as a private landowner owes to an invitee. *Denton Cnty. v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009). That duty requires the governmental entity "to use ordinary care to protect an invitee from a dangerous condition of which the owner is or reasonably should be aware." *Id.*

The TTCA does not define "special defect." However, the statute does provide that special defects include "excavations or obstructions on highways, roads, or streets." CIV. PRAC. & REM. § 101.022(b). The Texas Supreme Court has construed "special defects to include other defects of the same kind or class as the two expressly mentioned in the statute," but the class of special defects that are contemplated is a narrow one. *City of Denton*, 376 S.W.3d at 764; *Hayes*, 327 S.W.3d at 116. "A condition must therefore be in the same class as an excavation or obstruction on a roadway to constitute a special defect." *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012) (citing *Beynon*, 283 S.W.3d at 331). "It does not include common potholes or similar depressions in the roadway." *City of Denton*, 376 S.W.3d at 766.

9

When we determine whether a particular condition is like an excavation or obstruction on highways, roads, or streets—special defects—we consider things such as: "(1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual quality apart from the ordinary course of events; and (4) whether the condition presents an unexpected and unusual danger." *Id.* at 765.

In *Beynon*, the driver of a vehicle carrying a minor passenger was forced, by oncoming traffic, off Old Alton Road—the unlit, undivided two-lane roadway on which he was traveling. In order to avoid the oncoming traffic, the driver moved his vehicle to the far right side of the road. There was a steep drop-off of about eight inches at the edge of the pavement. When the driver pulled over to the right, the tires on the right side of his vehicle left the asphalt roadway and dropped off the edge. The vehicle briefly reentered the roadway, but by that time, the driver had lost control of his vehicle. The vehicle slid sideways into the grass and into a floodgate arm that was incorrectly pointing toward, rather than away from, traffic. The floodgate arm, owned and maintained by Denton County, was unsecured and located about three feet from the roadway. The floodgate arm punctured the vehicle and injured the minor passenger; the injuries resulted in the amputation of her leg below the knee. *Beynon*, 283 S.W.3d at 330–32, 334.

The supreme court noted that it "has never squarely confronted whether a hazard located off the road can (or can never) constitute a special defect." *Id.* at 331. However, the court acknowledged that, in *Payne*, it recognized that some courts of appeals had held that various off-road conditions constituted special defects. *Id.* (citing *Payne*, 838 S.W.2d at 238–39 n.3). Nevertheless, "conditions can be special defects like excavations or obstructions 'only if they pose a threat to the ordinary users of a particular roadway.'" *Id.* (quoting *Payne*, 838 S.W.2d at

238–39 n.3). We cannot say that a defect is a special defect if it "is not like an excavation or obstruction on a roadway." *Id*. at 331–32 (quoting *Payne*, 838 S.W.2d at 238–39 n.3).

In holding that the floodgate arm was not a special defect, a majority of the court in *Beynon* observed:

> Even still, the arm did not "pose a threat to the ordinary users of [Old Alton Road]," or prevent ordinary users from traveling on the road (as opposed to skidding off the road). Our cases rest on the objective expectations of an "ordinary user," and such a driver would not be expected to careen uncontrollably off the paved roadway and into the adjoining grass, as [the driver] admitted when he stated that "the normal course of travel for [Old Alton Road] would be the asphalt pavement."

*Id*. at 332 (footnote omitted).

In this context, we first address Appellees' claim that TxDOT should have made safe or warned drivers about an alleged pothole. In its motion for summary judgment, TxDOT argued that the evidence conclusively established that there was no pothole at or near the location of the accident and that a pothole was not the proximate cause of the accident. TxDOT recognizes that an accident report from the first accident mentions a pothole but contends that, "[a]t best, it does no more than create a 'surmise or suspicion' of a fact." Appellees concede that the accident report is the only evidence of a pothole but contend that "it is a fact issue to be determined by a jury."

Even if we assume that there was a pothole on the roadway, we still would not find that the State waived immunity in regards to it. When we determine whether a pothole is a special defect, as with any other special defect, we consider the following: (1) the size of any pothole; (2) whether a pothole unexpectedly and physically impaired an ordinary user's ability to travel on the road; (3) whether a pothole presented some unusual quality apart from the ordinary course of events;

11

and (4) whether a pothole presented an unexpected and unusual danger to the ordinary users of the roadway. *Hayes*, 327 S.W.3d at 116. The summary judgment record in this case is devoid of any such information pertaining to a pothole. Further, as to any claim that the pothole was an ordinary premises defect, there is no evidence that TxDOT had any actual notice of a pothole. The trial court erred when it denied TxDOT's motion for summary judgment as it related to the existence and condition of an alleged pothole.

We next address Appellees' claim that TxDOT had a duty to warn about the wreck site or to make the wreck site safe. The claim apparently arises from the assertion that the wreck site was a special defect. First, there is no evidence that the overturned Budget truck was in the same class or condition as an excavation or obstruction and that it posed a threat to ordinary users of the highway in the manner in which an excavation or obstruction would. Trooper Mauney testified that the Budget truck was not impeding traffic in either direction and that the Budget truck was located about "10 to 15 feet" from the eastbound lane of traffic. Trooper Wise and Trooper Haley also testified that the Budget truck was not impeding traffic and was about ten feet from the roadway. Moreover, the Budget truck was neither the condition that caused Walker's tires to leave the roadway nor the condition that caused her to lose control, skid into the Budget truck, and hit the decedent. Because the Budget truck was not a special defect, TxDOT did not have a duty to warn or make safe in connection with the wreck site. The trial court erred when it denied TxDOT's motion as to this claim.

We next address Appellees' claim that a steep drop-off was a special defect and that it was a proximate cause of the accident. In its motion for summary judgment, TxDOT argued that the summary judgment evidence showed that no drop-off existed at the time of the accident, that TxDOT did not have notice of a drop-off, and that the alleged drop-off was not a proximate cause of the accident.

The existence and size of a drop-off was contested in the summary judgment evidence.

Appellees cite *Morse v. State*, 905 S.W.2d 470, 475 (Tex. App.—Beaumont 1995, writ denied), in support of their argument that the size and condition of the drop-off in this case, as testified to by Trooper Wise, mandates a finding that the drop-off was a special defect as a matter of law. In *Morse*, the evidence showed that, in the single-car accident, "the left tires of the decedent's car went over a large drop-off between the traffic lane and the shoulder causing her to lose control of the vehicle, cross the access road, flip over, and crash into a tree." *Id.* at 472. The record was fully developed in a jury trial, and the evidence showed that the decedent was traveling under the posted speed limit and that she drove sixty-five feet along the drop-off, which was as deep as ten to twelve inches in places. *Id.* One expert testified that even a six-inch drop-off could cause accidents, and another expert said that a three-inch drop-off should be marked with a warning sign. *Id.* There had been three prior accidents at this location in a one-month period. *Id.* at 473. The driver from one accident testified that he "slipped off the shoulder" and that, when he tried to pull his vehicle back onto the road, "it started going sideways and [he] flipped [his] truck." *Id.* The driver from the second accident testified that his "left rear tire came off that shoulder there which threw the truck out of control" and that, after going over the drop-off, he could not prevent an accident. *Id.* In the third accident, an eyewitness saw a car leave the road, spin out of control, and knock down his mailbox. *Id.* The court concluded that the drop-off was a special defect after reviewing "[a] substantial amount of evidence" from the trial "concerning both the depth and the length of the drop-off." *Id.* at 475. The court relied heavily on the size of the condition. *Id.*

In *Payne*, the court acknowledged that some courts of appeals have held that "conditions threatening normal users of a road may be special defects even though

13

they do not occur on the surface of a road." *Payne*, 838 S.W.2d at 238–39 n.3. This court is one of those courts that have so held. In *Andrews v. City of Dallas*, 580 S.W.2d 908, 911 (Tex. Civ. App.—Eastland 1979, no writ), we held that the base of a traffic signal that was located six inches from the roadway was a special defect. In a footnote, the *Payne* court wrote, "Whether on a road or near one, however, conditions can be 'special defects such as excavations or obstructions on highways, roads, or streets' only if they pose a threat to the ordinary users of a particular roadway." *Payne*, 838 S.W.2d at 238–39 n.3.

We cannot say that the holding in *Beynon*, 283 S.W.3d at 330–32, would dictate that we hold otherwise in this case. However, the summary judgment evidence, as we have outlined above, was sufficient to raise a fact issue as to whether the drop-off existed and, if so, as to its depth. That fact question must be resolved before the question of whether such a drop-off, if one existed, was a special defect. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28. Because the evidence is sufficient to raise a fact issue as to whether the drop-off did or did not exist and, if so, as to the condition of the drop-off, we hold that the trial court did not err when it denied TxDOT's motion for summary judgment on these grounds. Once the factfinder has determined the existence, if any, and condition of the drop-off, then the trial court will be in a position to determine, as a matter of law, whether the drop-off was or was not a special defect. *Id.*

We hold that the evidence raised an issue of material fact sufficient to support the trial court's denial of TxDOT's motion for summary judgment on the issue of the existence and the condition of an alleged drop-off. We affirm that portion of the trial court's judgment and hold that the factfinder should determine the existence and size of the condition and that the trial court should then

14

determine, as a matter of law, whether the drop-off, if any, constitutes a special defect. Otherwise, we hold that TxDOT was protected from suit by sovereign immunity on all other theories of recovery asserted by Appellees against TxDOT, and we reverse the trial court's judgment as to those claims and render judgment dismissing those claims.


JIM R. WRIGHT
CHIEF JUSTICE


May 22, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J