**Affirmed and Majority and Dissenting Opinions filed January 26, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00839-CV

---

## JASON KOWNSLAR, Appellant

### V.

## METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, TEXAS, Appellee

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-18307-B**

---

## M A J O R I T Y   O P I N I O N

In this personal-injury case arising from a motorcycle accident, the plaintiff appeals the trial court's final judgment sustaining a transit authority's plea to the jurisdiction based on governmental immunity. We conclude that the evidence before the trial court conclusively proved that the alleged defective condition does not fall within the narrow class of defects that are special defects under section 101.022(b) of the Civil Practice and Remedies Code. The plaintiff has not alleged

facts sufficient to demonstrate a waiver of the transit authority's immunity as to another negligence claim, and the plaintiff forfeited the opportunity to replead or amend his petition. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about June 28, 2015, appellant/plaintiff Jason Kownslar was severely injured in a motorcycle accident in downtown Houston, Texas. At his deposition Kownslar testified as follows:

- While driving his motorcycle, Kownslar exited Interstate 45 and got on Rusk Street.

- Kownslar was traveling in the right lane of Rusk Street heading toward the intersection with Bagby Street.

- Kownslar came to a part of Rusk Street where a light-rail track joins the street.

- When Kownslar reached that part of the street, he saw the light-rail track.

- The front tire of Kownslar's motorcycle got stuck in the "cut-out, the divot that was the space in between that [one of the rails of the] track is laid in."

- Kownslar's tire got stuck in the space for "the first rail that [he] would have come across from that direction."

- The back tire of Kownslar's motorcycle "was riding in the track as well."

- Kownslar was traveling at a speed of "10, 15 miles per hour."

- Kownslar drove for a period of time with his tires like that, and he was applying his brakes.

- Kownslar tried to change lanes and "felt the resistance of the tire on the edge of the concrete." The motorcycle would not exit the place where it was wedged in the light-rail track.

- The back tire "fishtailed" and Kownslar was thrown into the air over the front of the motorcycle.

- Kownslar landed on the back of his neck, and he slid on the pavement towards the intersection. Kownslar did not make contact with another vehicle.

Kownslar filed this lawsuit, originally suing only appellee/defendant Metropolitan Transit Authority of Harris County, Texas ("Metro") and later adding the City of Houston and other parties as defendants. In his live pleading, Kownslar asserted against Metro (1) a negligence claim based on an alleged special defect in the roadway (the "Special Defect Claim"), (2) a negligence claim based on an ordinary premises defect theory ("Ordinary Premises Claim"), and (3) a negligence claim based on Metro's purported negligence in allegedly "failing to design, construct, properly implement[,] and maintain the metro rail tracks in question in a reasonably safe condition and free of hazards to [Kownslar] and other members of the public traveling on the roadway" (the "Negligent Activity Claim").

Metro filed a plea to the jurisdiction seeking dismissal of the Special Defect Claim because the light-rail track in question ("Track") is not a special defect. Metro submitted a photograph of the area where Kownslar's accident occurred. Metro asserted that the Track does not physically block the road or present an unusual quality apart from any other roadway in which there are light rail tracks. Metro contended that the Track does not present an unexpected or unusual danger to ordinary users of roadways. Metro also asserted: (1) the Track is open and obvious to all drivers on Rusk Street; (2) the Track is a permanent condition and therefore not a special defect; and (3) a street sign on Rusk Street warned all drivers of railroad tracks ahead. As to the Negligent Activity Claim, Metro asserted that all of its alleged conduct made the basis of this claim falls within Metro's discretionary powers as a governmental entity, and therefore, under section 101.056 of the Civil Practice and Remedies Code, there is no waiver under the Texas Tort Claims Act of Metro's governmental immunity for any part of the Negligent Activity Claim. Metro asserted that the design of any public work, such as a roadway, is a discretionary function involving policy decisions. Metro

3

submitted two photographs in support of its plea to the jurisdiction.

Kownslar responded in opposition to Metro's jurisdictional plea, submitting excerpts from Kownslar's deposition. Metro responded with a reply in which it submitted three more photographs. Metro asserted that whether a "special defect" exists was a matter of law for the trial court to decide. Metro noted that the Track occupies a fraction of one of four lanes on Rusk Street. Metro filed a second reply in which it asserted that there is no waiver of governmental immunity under the Texas Tort Claims Act for any of the negligent acts alleged by Kownslar. Metro asserted that its governmental immunity is not waived under section 101.021(1) of the Civil Practice and Remedies Code because no Metro employee was operating or using a motor-driven vehicle or motor-driven equipment that cased Kownslar's injuries. Kownslar objected to Metro's second reply, asserting that the reply constituted a new or amended plea to the jurisdiction and that the reply improperly asserted new arguments. Kownslar contended that a party may not raise a new ground for jurisdictional dismissal in a reply. Kownslar asked the trial court to strike the second reply. Kownslar also asserted that section 101.021(2) of the Civil Practice and Remedies Code waives Metro's governmental immunity for Kownslar's claims because his personal injuries were caused by a condition of tangible personal or real property.[1]

After the trial court held a hearing on the plea to the jurisdiction at which the court only heard arguments of counsel, the trial court signed an interlocutory order in which the court granted Metro's plea to the jurisdiction and dismissed with prejudice all of Kownslar's claims against Metro. Kownslar filed a motion for reconsideration of this order, and the trial court denied this motion. The trial court later granted Kownslar's motion to sever his claims against Metro into a separate

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West, Westlaw through 2021 C.S.).

4

case to make the trial court's ruling on Metro's plea to the jurisdiction final and appealable. Kownslar has timely appealed.

The trial court also signed an order sustaining the City of Houston's jurisdictional plea. Kownslar appealed this order in a separate appeal, and this court affirmed the trial court's ruling. *See Kownslar v. City of Houston*, 654 S.W.3d 472, 480 (Tex. App.—Houston [14th Dist.] 2022, pet. filed).

## II. ISSUES AND ANALYSIS

Metro is entitled to immunity from suit under the doctrine of governmental immunity unless its governmental immunity has been waived. *See Metropolitan Transit Auth. of Harris County v. Carter*, No. 14-19-00422-CV, 2021 WL 126687, at *4 (Tex. App.—Houston [14th Dist.] Jan. 14, 2021, no pet.) (mem. op.). Kownslar asserted three claims against Metro in the trial court: (1) the Special Defect Claim, (2) the Ordinary Premises Claim, and (3) the Negligent Activity Claim. The trial court granted Metro's jurisdictional plea as to each claim. On appeal, Kownslar has not discussed the Ordinary Premises Claim, has not asserted that Metro's immunity has been waived as to this claim, and has not briefed any argument challenging the trial court's judgment as to this claim. Thus, we need only address the trial court's judgment as to the Special Defect Claim and the Negligent Activity Claim.

### A. Did the evidence conclusively prove that the condition of the light-rail track was not a special defect?

In his first issue, Kownslar asserts that the trial court erred in granting Metro's jurisdictional plea because Metro failed to meet its burden to conclusively negate the challenged jurisdictional facts. Kownslar asserts that Metro's photographic evidence did not conclusively prove that the condition of the light-rail track was not a special defect.

5

The Texas Tort Claims Act provides a limited waiver of a governmental unit's sovereign or governmental immunity, allowing suits to be brought against the governmental unit "only in certain, narrowly defined circumstances." *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). "Given the Legislature's preference for a limited immunity waiver," courts must strictly construe the Act's waiver provisions. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015). In the Texas Tort Claims Act, the Legislature waived a governmental unit's immunity from suit and liability as to claims seeking to hold the governmental unit liable for personal injury caused by a condition of real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West, Westlaw through 2021 C.S.). Subject to certain exceptions, if a claim against a governmental unit arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (West, Westlaw through 2021 C.S.). This limitation on a governmental unit's duty "does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets."[2] *Id*. When a special defect exists, the governmental unit owes the same duty to the claimant that a private landowner owes to an invitee. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 654–55 (Tex. 2012).

Whether a condition is a special defect is a question of law that we review de novo. *Id*. at 655. The Legislature does not define "special defects" but likens them to conditions "such as excavations or obstructions on highways, roads, or streets." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *see The Univ. of Texas at Austin*

---

[2] The other exceptions do not apply to the alleged facts that are the basis of Kownslar's suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022.

*v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010). The Supreme Court of Texas has determined that conditions may be special defects only if they pose a threat to the ordinary users of a particular roadway. *See id*.; *Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009). A court cannot classify a condition as a special defect if the defect is not like an excavation or obstruction on a roadway. *Beynon*, 283 S.W.3d at 331–32. In deciding whether a condition is a special defect, the Supreme Court of Texas has considered characteristics of the class of special defect, such as (1) the size of the condition, (2) whether the condition unexpectedly and physically impairs a vehicle's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger to the ordinary users of the roadway. *See Hayes*, 327 S.W.3d at 116.

The class of special defects contemplated by the statute is narrow. *Id.* Courts determine whether a condition is a special defect based on the objective expectations of an "ordinary user" who follows the "normal course of travel." *Id*. A claimant's subjective knowledge or lack of knowledge of a condition is not relevant to a court's determination of whether the condition is a special defect. *See Perches*, 388 S.W.3d at 655.

In filing its jurisdictional plea, Metro challenged the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's granting of the plea. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In its plea, Metro challenged the existence of jurisdictional facts as to the Special Defect Claim, so we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised as to this claim, as the trial court is required to do. *See*

7

*id.* If the evidence created a fact question as to the jurisdictional issue, then the trial court should have denied the plea. *See id.* at 227–28. But, if the relevant evidence was undisputed or failed to raise a fact question on the jurisdictional issue, then the trial court properly ruled on the plea as a matter of law. *Id.* at 228.

The photographs in evidence show the part of Rusk Street at issue in this case is a one-way street. Kownslar was traveling on his motorcycle in the right lane of Rusk Street heading toward the intersection with Bagby Street when Kownslar came to a part of Rusk Street where the Track joins the street. Kownslar claims that the front and rear tires of his motorcycle got stuck or wedged in the space in the concrete in which one of the rails of the Track is laid.

On appeal, Kownslar asserts that the width of the space in which each rail is laid presents an unexpected and unusual danger as evidenced by Kownslar's motorcycle tires getting caught in that space. We presume for the purposes of our analysis that the space in which each rail is laid on the part of Rusk Street in question is wide enough for Kownslar's tires to get caught in the space and that this width constitutes a defect (the "Alleged Defect"). The photographs submitted by Metro show that Rusk Street is a concrete roadway and that the Track enters into Rusk Street from the left and then enters completely within the far-right lane. The photographs show that each of the two rails of the Track is embedded in the concrete of the roadway in a space in the street's concrete. One photograph shows the Track entering the far-right lane of Rusk Street before the intersection with Bagby Street. The photographs show that there are two spaces in the concrete each of which contains one of the rails of the Track. Though the evidence does not contain a close-up photograph of the spaces or the rails, the photographs submitted by Metro show that the two spaces do not take up a significant amount of the width of the far-right lane of Rusk Street.

The Alleged Defect is nothing like the special defect found to exist in *Harris County v. Eaton. See* 573 S.W.2d 177, 178–80 (Tex. 1978); *Kownslar*, 654 S.W.3d at 477; *see also City of Denton v. Paper*, 376 S.W.3d 762, 764–66 (Tex. 2012) (holding that a two-inch to five-inch difference in a street's elevation was not a special defect and stating that the allegedly defective depression in the street was nothing like the special defect found to exist in *Eaton*). The *Eaton* case involved an abnormally large hole in the road. *See Eaton*, 573 S.W.2d at 178–80. This hole varied from six to ten inches in depth and was four feet wide at some parts and nine feet wide at other parts. *See id*. at 178. The hole extended over ninety percent of the width of the highway. *See id*. In *Eaton*, the Supreme Court of Texas commented that the condition "reached the proportions of a ditch across the highway" *Id*. at 179. The high court also observed that "one could not stay on the pavement and miss it." *Id*. at 178.

Unlike the roadway's condition in *Eaton*, the Alleged Defect did not physically impair an ordinary user's ability to travel on Rusk Street, even an ordinary user riding a motorcycle. *See Paper*, 376 S.W.3d at 766 (concluding that an allegedly defective depression in the street did not physically impair the ability to travel on the street); *Kownslar*, 654 S.W.3d at 477–78 (concluding, in Kownslar's appeal of order granting City of Houston's jurisdictional plea, that the Alleged Defect did not physically impair an ordinary user's ability to travel on Rusk Street, even an ordinary user riding a motorcycle). Rather, the photographs submitted by Metro show that an ordinary user riding a motorcycle on Rusk Street could have avoided the Alleged Defect without leaving Rusk Street or entering a lane of oncoming traffic[3] by crossing the two spaces containing the rails at a ninety-degree angle or an angle close thereto and travelling in the next lane over

_____

[3] The photographs in evidence show that this part of Rusk Street is a one-way street, so there was no lane of oncoming traffic nearby.

9

from the far-right lane.[4] *See Paper*, 376 S.W.3d at 764–66 (holding a two-inch to five-inch difference in elevation in a street was not a special defect and stating that photographs indicated that the allegedly defective depression in the street could have been avoided without leaving the street or entering a lane of oncoming traffic); *Kownslar*, 654 S.W.3d at 477–78 (concluding, in Kownslar's appeal of order granting City of Houston's jurisdictional plea, that the photographs submitted by the City of Houston showed an ordinary user riding a motorcycle on Rusk Street could have avoided the Alleged Defect without leaving Rusk Street or entering a lane of oncoming traffic).

Kownslar asserts that he could not be expected to use other traffic lanes or to avoid the Track because he had no prior knowledge that his motorcycle tire could get stuck or wedged in the space in which the rail is laid. In response to Metro's jurisdictional plea, Kownslar submitted excerpts from the transcript of his deposition. In these excerpts Kownslar states that the Track was "unexpected" because Kownslar had "never seen railroad tracks run like that before." We base our determination as to whether the Alleged Defect is a special defect on the objective expectations of the ordinary users of Rusk Street who follow the normal course of travel. *See Perches*, 388 S.W.3d at 655; *Hayes*, 327 S.W.3d at 116; *Kownslar*, 654 S.W.3d at 478. Kownslar's subjective lack of knowledge of the Alleged Defect and Kownslar's failure to expect the Track because he had never seen tracks like that before are not relevant to this court's determination of whether the Alleged Defect is a special defect. *See Hayes*, 327 S.W.3d at 116; *Kownslar*, 654 S.W.3d at 478.

The Alleged Defect does not present some unusual quality apart from the

---

[4] Kownslar contends that although he had the ability to choose the next lane over from the far-right lane, he did not choose this lane because it is a turn lane. The photographs in evidence show that this lane goes straight ahead and is not a turn lane.

ordinary course of events, nor does the Alleged Defect present an unexpected and unusual danger to the ordinary users of Rusk Street. *See Hayes*, 327 S.W.3d at 116; *Kownslar*, 654 S.W.3d at 478. Based on the objective expectations of the ordinary users of Rusk Street, the Alleged Defect does not pose a threat to these ordinary users. *See Hayes*, 327 S.W.3d at 116; *Beynon*, 283 S.W.3d at 331; *Kownslar*, 654 S.W.3d at 478. The Alleged Defect is not an excavation or obstruction on Rusk Street, nor is the Alleged Defect like an excavation or obstruction on Rusk Street. *See Beynon*, 283 S.W.3d at 331–32; *Kownslar*, 654 S.W.3d at 478. We conclude that the evidence before the trial court conclusively proved that the Alleged Defect is not within the narrow class of defects that are special defects under section 101.022(b) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *Perches*, 388 S.W.3d at 655–56; *Hayes*, 327 S.W.3d at 116–17; *Beynon*, 283 S.W.3d at 331–33; *Kownslar*, 654 S.W.3d at 477–78.

Kownslar cites *City of El Paso v. Chacon* for the proposition that a court cannot conclude as a matter of law that a defect does not constitute a special defect if the record does not show the actual size of the defect. *See* 148 S.W.3d 417, 425 (Tex. App.—El Paso 2004, pet. denied). In *City of El Paso* there was no photograph or other evidence of the size of the alleged defect, a hole in the sidewalk. *See id*. at 424–25. In today's case, the trial court had before it photographs showing the size of the Alleged Defect. The *City of El Paso* case is not on point. *See id*.

Kownslar also relies on *Texas Department of Transportation v. Lopez*. *See* 436 S.W.3d 95, 105 (Tex. App.—Eastland 2014, pet. denied). In that case, the court of appeals concluded that the summary-judgment evidence raised a fact issue as to whether a drop-off from a traffic lane to the shoulder on a highway existed and, if so, its condition and that the factfinder needed to resolve these issues before

the trial court could determine whether the drop-off, if any, constituted a special defect. *See id*. In *Lopez*, the summary-judgment evidence contained (1) the testimony of one police officer that there was a drop-off on the highway that was at least five inches and caused the accident; and (2) the testimony of another police officer that the drop-off was "tapered" and that a driver's unsafe speed and inattention caused the accident. *See id*. at 99. The *Lopez* case did not involve photographs of the alleged drop-off. *See id*. at 99, 104–05. The *Lopez* case is not on point. *See id*.

Kownslar contends that the five color photographs submitted by Metro were insufficient. Two of the photographs were of the area where Kownslar agrees the accident occurred. Two of the photographs are of a sign warning of a railroad crossing. One photograph shows the Track entering the far-right lane of Rusk Street. On appeal, Kownslar states that the photographs do not accurately depict the Alleged Defect, but Kownslar does not say explain why he thinks the photographs are inaccurate. Kownslar asserts that the photographs of the Track were of bad quality and taken from such a distance that it is impossible to determine the depth and width of the space in which each rail is laid and other characteristics of the defect, thus creating a fact question preventing the trial court from granting Metro's plea to the jurisdiction. Though Metro did not submit a close-up photograph of either rail or the space in which the rail is embedded, the photographs submitted by Metro provide adequate information to determine, as a matter of law, that the Alleged Defect is not a special defect. *See Kownslar*, 654 S.W.3d at 478; *Tex. Dep't of Transp. v. Pierce*, No. 12-19-00260-CV, 2020 WL 500779, at *3–5 (Tex. App.—Tyler Jan. 31, 2020, pet. denied) (mem. op.). We overrule Kownslar's first issue.[5]

_____

[5] When, as in this case, the order sustaining a plea to the jurisdiction does not specify the grounds

**B. Did the trial court err in granting Metro's jurisdictional plea as to the Negligent Activity Claim?**

In his second issue Kownslar asserts that the trial court erred in granting Metro's jurisdictional plea as to the Negligent Activity Claim, in which Kownslar complained of Metro's alleged negligence "in failing to design, construct, properly implement[,] and maintain the metro rail tracks in question in a reasonably safe condition and free of hazards to [Kownslar] and other members of the public traveling on the roadway." Kownslar alleged that this negligence proximately caused the occurrence made the basis of his suit, his injuries, and his damages. Metro asserted that all of this alleged negligence falls within Metro's discretionary powers and therefore under section 101.056 of the Civil Practice and Remedies Code the Texas Tort Claims Act does not apply to this claim.

In its plea to the jurisdiction Metro challenged Kownslar's pleadings as to the Negligent Activity Claim. In this situation, the trial court had to determine if Kownslar alleged facts sufficient to demonstrate a waiver of Metro's immunity that would give the trial court jurisdiction. *See City of North Richland Hills v. Friend*, 370 S.W.3d 369, 371–72 (Tex. 2012); *Stamos v. Houston Indep. Sch. Dist.*, No. 14-18-00340-CV, 2020 WL 1528047, at *2 (Tex. App.—Houston [14th Dist.] Mar. 31, 2020, no pet.) (mem. op.). Whether Kownslar met this burden is a question of law that we review de novo. *Stamos*, 2020 WL 1528047, at *2. In making this determination, we construe the pleadings liberally in Kownslar's favor, consider the Kownslar's intent, and accept as true the factual allegations in the pleadings. *Id.*

---

upon which the trial court relied, we must affirm if any of the independent grounds in the jurisdictional plea has merit. *See Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 621 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Thus, we need not and do not address the other grounds that Metro asserted in its jurisdictional plea as to the Special Defect Claim.

In his pleading, Kownslar did not allege that any statute waived Metro's governmental immunity as to his Negligent Activity Claim. Nonetheless, Kownslar stated in in his live pleading that he brought suit under the Texas Tort Claims Act, so we presume that Kownslar alleged a waiver of Metro's governmental immunity under the Texas Tort Claims Act. But, section 101.056 of the Civil Practice and Remedies Code provides that the Texas Tort Claims Act does not apply to "a claim based on: (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (West, Westlaw through 2021 C.S.).

Section 101.056 preserves immunity "for the state's failure to act, when no particular action is required by law." *Stephen F. Austin State University v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007). This exception to the applicability of the Texas Tort Claims Act "avoid[s] judicial review or interference with those policy decisions committed to the other branches of government." *Id*. In *Flynn*, the Supreme Court of Texas characterized the existing case law on section 101.056 as articulating "more than one test for determining when questioned conduct involves a protected 'discretionary' determination." *Id*.; *see Tarrant Regional Water Dist. v. Johnson*, 572 S.W.3d 658, 665 (Tex. 2019). The first test "distinguishes between policy-level decisions and operational-level decisions." *Flynn*, 228 S.W.3d at 657. The second distinguishes between the design of public works, for which the *Flynn* court said there is immunity, and the maintenance of public works, for which the *Flynn* court said there is not immunity. *See id*. Although described at times as two distinct inquiries, the Supreme Court of Texas stated in *Johnson* that "both of these

14

'tests' have the effect of distinguishing 'between policy-level decisions and operational-level decisions.'" *Johnson*, 572 S.W.3d at 665 (quoting *Flynn*, 228 S.W.3d at 657). The *Johnson* court concluded that the design versus maintenance "test" is simply the policy-level versus operational-level test applied to public works. *See Johnson*, 572 S.W.3d at 665. According to the *Johnson* court, the interconnectedness of the two "tests" is illustrated in the *Flynn* court's "mingled application of them." *Id*.; *see Flynn*, 228 S.W.3d at 657.

In *Johnson* the Supreme Court of Texas described a line of cases in which the high court had indicated that a bright-line rule existed under which the design of a public work is always a discretionary function protected under section 101.056 and the maintenance of a public work is always a non-discretionary function not protected under section 101.056. *See Johnson*, 572 S.W.3d at 666–67. The *Johnson* court then rejected any such bright-line rule as being contrary to the plain text of section 101.056. *See id*. at 666–669 & n.4. The *Johnson* court indicated that under some fact patterns, the design of a public work may be a non-discretionary function not protected by section 101.056, and the maintenance of a public work may be a discretionary function protected under section 101.056. *See id*. Focusing on the statute's text, the *Johnson* court stated that (1) section 101.056 protects a governmental entity's failure to act, its decision not to act, or its failure to make any decision at all, on matters within the discretion of the governmental unit; and (2) section 101.056 does not protect a governmental entity's failure to act when a particular action is required by law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056; *Johnson*, 572 S.W.3d at 665–66. The *Johnson* court held that the alleged failure to maintain a public work in that case was a discretionary function protected under section 101.056. *See Johnson*, 572 S.W.3d at 669–70.

In pleading the Negligent Activity Claim in his petition, Kownslar asserted

15

that Metro was negligent "in failing to design, construct, properly implement[,] and maintain the metro rail tracks in question in a reasonably safe condition and free of hazards to [Kownslar] and other members of the public traveling on the roadway." Kownslar alleged that this negligence proximately caused his injuries. Under the Supreme Court's opinion in *Johnson*, any of these alleged failures by Metro might or might not be protected by section 101.056. *See id*. at 666–669 & n.4. In his petition, Kownslar did not allege any facts showing that any of this alleged negligence was not protected by section 101.056. Kownslar did not allege that Metro was required by law to perform any of the acts that Metro allegedly failed to perform. Kownslar did not allege any facts regarding Metro's role in the design, construction, and maintenance of the Track. Kownslar did not plead any facts relating to any duty by Metro to design, construct, or maintain the Track. Kownslar did not plead any facts that would show whether Metro's alleged failures to act were based on policy-level decisions or operational-level decisions. Even presuming that as to the Negligent Activity Claim, Kownslar relied on the waiver of governmental immunity under the Texas Tort Claims Act, this waiver does not apply if Metro's alleged failures to act are protected under section 101.056. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056; *Johnson*, 572 S.W.3d at 665–70. The evidence submitted by the parties is not relevant to the jurisdictional issue of whether section 101.056 excludes Metro's alleged negligence in the Negligent Activity Claim from the waiver of immunity in the Texas Tort Claims Act. Construing the pleadings liberally in Kownslar's favor, looking to his intent, and accepting as true the factual allegations in his pleadings, Kownslar has not alleged facts sufficient to demonstrate a waiver of Metro's immunity as to the Negligent Activity Claim. *See City of North Richland Hills*, 370 S.W.3d at 371–73; *Stamos*, 2020 WL 1528047, at *2.

16

Although the trial court granted Metro's jurisdictional plea, on appeal Kownslar has not requested a remand for an opportunity to replead his Negligent Activity Claim. Although the general rule reflects a preference for allowing amendment to replead, a plaintiff may forfeit this opportunity through inaction. *See Stamos*, 2020 WL 1528047, at *4; *Smith v. City of League City*, 338 S.W.3d 114, 125 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Almost three months after Metro filed its plea to the jurisdiction and before the trial court granted the plea, Kownslar amended his petition but did not replead his Negligent Activity Claim or add any factual allegations showing a waiver of Metro's governmental immunity as to this claim. *See Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) ("If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does *not* allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action"). At no time in the trial court did Kownslar ask the trial court for an opportunity to replead or amend his petition, and the trial court granted Metro's jurisdictional plea. In this scenario, Kownslar forfeited the opportunity to replead or amend his petition. *See Sykes*, 136 S.W.3d at 639; *Stamos*, 2020 WL 1528047, at *4; *Smith*, 338 S.W.3d at 125. We conclude that the trial court did not err in granting Metro's jurisdictional plea as to the Negligent Activity Claim.[6] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056; *Johnson*, 572 S.W.3d at 666–669 & n.4; *City of North Richland Hills*, 370 S.W.3d

---

[6] We need not and do not address whether the trial court's judgment as to the Negligent Activity Claim may be affirmed based on the ground asserted in Metro's second reply, in which Metro asserted that there is no waiver of governmental immunity under the Texas Tort Claims Act for any of the negligent acts alleged by Kownslar and that Metro's governmental immunity is not waived under section 101.021(1) of the Civil Practice and Remedies Code because no Metro employee was operating or using a motor-driven vehicle or motor-driven equipment that cased Kownslar's injuries. *See Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (stating that for the waiver of immunity in section 101.021(1) to apply, "a government employee must have been actively operating the vehicle at the time of the incident")

17

at 371–73; *Stamos*, 2020 WL 1528047, at *2.

We overrule Kownslar's second issue.

### III. CONCLUSION

The evidence before the trial court conclusively proved that the Alleged Defect is not within the narrow class of defects that are special defects under section 101.022(b) of the Civil Practice and Remedies Code. There is no genuine fact issue as to whether the Alleged Defect constitutes a special defect. Under the applicable standard of review, Kownslar has not alleged facts sufficient to demonstrate a waiver of Metro's immunity as to the Negligent Activity Claim, and Kownslar forfeited the opportunity to replead or amend his petition. Having overruled all of Kownslar's issues, we affirm the trial court's judgment.


/s/     Randy Wilson
Justice

Panel consists of Justices Jewell, Poissant, and Wilson (Poissant, J., dissenting).