•           •           • 
 • • •





                                                                  OPINION

No. 04-09-00095-CV

Kenneth WARDLAW, Individually and on Behalf of the Estate of Gwendolyn Elizabeth
Wardlaw, Deceased, and as Next Friend of John Moore,
Appellant

v.

TEXAS DEPARTMENT OF TRANSPORTATION, 
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 06-866-A
Honorable Stephen B. Ables, Judge Presiding
 
Opinion by:    Sandee Bryan Marion, Justice
 
Sitting:            Sandee Bryan Marion, Justice
                        Rebecca Simmons, Justice
Marialyn Barnard, Justice
 
Delivered and Filed: November 25, 2009      

AFFIRMED

            This is an appeal from the trial court’s granting of appellee’s plea to the jurisdiction and
motion for summary judgment. We affirm.
BACKGROUND
            The Texas Department of Transportation (“TxDOT”) owns and operates a low water crossing
where FM 1350 crosses over the Guadalupe River (hereinafter “Government Crossing”). 
Government Crossing consists of three man-made box culverts that divert water under the road,
which is paved over the culverts. In the days leading up to July 3, 2004, the area experienced
persistent rain that led to flooding of area roads and a rise in the river’s water level. On July 3, 2004,
Gwendolyn Wardlaw, her husband, and two friends were floating down the Guadalupe River on
inner tubes. As the group approached Government Crossing, Ms. Wardlaw and her two friends were
sucked into the box culverts. Although the friends made it through to the other side of the culverts,
tragically, Ms. Wardlaw was trapped in debris that blocked one of the culverts and she drowned. 
The underlying lawsuit was brought against TxDOT by Kenneth Wardlaw (“Wardlaw”) individually,
as representative of Ms. Wardlaw’s estate, and as next friend of John Moore.
            In his petition, Wardlaw alleged TxDOT was grossly negligent when it failed to remedy the
defect on its premises and for not warning of the dangerous condition created by the low water
crossing. Wardlaw based this contention on his allegation that TxDOT “failed to install grates to
cover the underpass of the bridge, remove the debris which it allowed to accumulate in its crossing,”
and failed to post warning signs. Wardlaw also alleged the condition was a special defect. TxDOT
filed a combined plea to the jurisdiction and motion for summary judgment on Wardlaw’s premise
defect and special defect claims. The trial court granted TxDOT’s plea and motion for summary
judgment, without stating its grounds. On appeal, Wardlaw raises two issues: (1) TxDOT waived
its immunity for the premise defect claim and (2) TxDOT waived its immunity for the special defect
claim.
STANDARD OF REVIEWA challenge to a trial court’s subject matter jurisdiction may be raised in a plea to the
jurisdiction or in a motion for summary judgment. State v. Lueck, 290 S.W.3d 876, 884 (Tex. 2009). 
Because TxDOT challenged the trial court’s subject matter jurisdiction in both a plea to the
jurisdiction and a motion for summary judgment, we apply the appropriate standard of review for
both. See Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225-28 (Tex. 2004) (standard
of review for plea to the jurisdiction); Tex. R. Civ. P. 166a(c) (standard of review for traditional
summary judgment). Whether a court has subject matter jurisdiction is a question of law, which we
review de novo. Miranda, 133 S.W.3d at 226. 
PREMISE DEFECT AND SPECIAL DEFECT CLAIMS
            A governmental entity is generally immune from suit unless the immunity is waived by the
Texas Legislature. City of Dallas v. Reed, 258 S.W.3d 620, 622 (Tex. 2008). The Legislature has
provided a limited waiver of immunity for tort claims arising from a condition or use of real property
“if the governmental unit would, were it a private person, be liable to the claimant . . . .” Tex. Civ.
Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005). These claims may arise from either an
ordinary premise defect or a special defect, depending upon the condition of the property. See id.
§ 101.022 (Vernon Supp. 2009). Whether a condition is a premise defect or a special defect is a
question of law. State Dep’t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 238 (Tex.
1992) (op. on reh’g).
A.        Premise Defect Claim - Actual Knowledge 
            In its motion for summary judgment, TxDOT argued Wardlaw’s premise defect claim and
gross negligence claim fail because Wardlaw did not establish TxDOT had actual knowledge of the
presence of debris under the bridge at the time of Ms. Wardlaw’s accident. On appeal, Wardlaw
briefs all the elements of a premise defect claim, but we confine our discussion to only actual
knowledge because that is the sole element challenged by TxDOT in its motion for summary
judgment.
            When there is an ordinary premise defect, the duty owed by the governmental unit is the same
duty owed by a private landowner to a licensee, which requires a landowner not to injure a licensee
by willful, wanton or grossly negligent conduct and to use ordinary care to warn or make reasonably
safe a dangerous condition of which the owner has actual knowledge and of which the licensee is
not aware. Payne, 838 S.W.2d at 237; see also Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a). 
“Actual knowledge requires knowledge that the dangerous condition existed at the time of the
accident, as opposed to constructive knowledge which can be established by facts or inferences that
a dangerous condition could develop over time.” City of Corsicana v. Stewart, 249 S.W.3d 412,
414-15 (Tex. 2008). Circumstantial evidence may establish actual knowledge “when it ‘either
directly or by reasonable inference’ supports that conclusion.” Id. at 415 (citations omitted). 
            TxDOT does not dispute that it knew (1) the Guadalupe River was frequented by people
floating on inner tubes, such as Ms. Wardlaw; (2) people were likely to be in the river at the crossing
over the Fourth of July weekend, when this accident occurred; and (3) people in the river would
encounter low water crossings, including Government Crossing. However, none of this evidence
goes to knowledge of the dangerous condition at the time of the accident. In his response to
TxDOT’s motion for summary judgment, Wardlaw relied on the following: (1) Troy Witt, a TxDOT
employee, testified he and his crew pulled debris from Government Crossing, but he did not state
any specific date for having done so; (2) Michael Crawford, a TxDOT area engineer, testified the
crews removed debris “many times” and the “potential exists for debris to be stuck in box culverts
during floods”; (3) John Kilgore, a TxDOT structural engineer, acknowledged that some crossings
had a tendency to collect debris; and (4) Government Crossing had a tendency to collect debris. Witt
also testified that on July 3, 2004, records showed about one foot of water over FM 1350 at
approximately 11:00 a.m., and because of flooding, the road was closed. Finally, Wardlaw’s expert,
David Steitle, stated in his affidavit that “the State regularly closed Government Crossing during
periods of heavy rainfall . . . . [and he knew] that the State of Texas also closes those crossings from
time to time because of debris which occludes the water flow.” Although the record does not contain
the exact time of Ms. Wardlaw’s death, Wardlaw asserts (and TxDOT does not dispute) that she was
caught in the debris and drowned some time in the afternoon of July 3, 2004.
            We must conclude Wardlaw did not meet his burden of proof on whether TxDOT had actual
knowledge the culverts were clogged with debris at the time of the accident. The evidence
establishes, at most, that FM 1350 was closed to traffic because of water on the road and
Government Crossing tended to become clogged with debris during heavy rainfall. The record
indicates three feet of water over Government Crossing on June 30, 2004, and one foot of water over
the crossing on July 3, 2004. But, no evidence was offered showing TxDOT knew the crossing was
clogged on July 3, 2004. Also, evidence that FM 1350 was covered in water at 11:00 a.m. on July
3rd does not necessarily mean all three of the culverts were clogged with debris at that time or later
in the day. Michael Crawford testified it was not possible to know if water over the road was caused
by debris inside the culvert or by the flow of the river pushing water over the road. One of Ms.
Wardlaw’s friends testified that at the time of the accident the water level of the river was “under
the bridge” and the water was “very calm.” Accordingly, we affirm the summary judgment in favor
of TxDOT on Wardlaw’s premise defect and gross negligence claims.



B.        Special Defect
            In TxDOT’s plea to the jurisdiction as to Wardlaw’s special defect claim, TxDOT argued
Wardlaw’s special defect claim fails because the condition was not, as a matter of law, an excavation
or obstruction located on a roadway and Ms. Wardlaw was not an ordinary user of the roadway
because she was not on FM 1350 at the time of the accident.
            In a special defect liability claim, the duty owed by the governmental unit is that owed by a
private landowner to an invitee, which requires an owner to use ordinary care to reduce or eliminate
unreasonable risks of harm of which the owner is aware or reasonably should be aware. City of
Dallas, 258 S.W.3d at 622. The Tort Claims Act does not define “special defect” but, instead,
“likens it to ‘excavations or obstructions’ that exist ‘on’ the roadway surface.” Denton County v.
Beynon, 283 S.W.3d 329, 331 (Tex. 2009); Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b). 
            TxDOT relies on Payne for its argument that a special defect must be on the roadway and
must constitute an unexpected danger to the ordinary user of the roadway. See Payne, 838 S.W.2d
at 239 (holding that end of culvert into which plaintiff fell “was located far enough from the paved
surface that vehicular passengers and other normal users of the roadway were unlikely to encounter
it.”). According to TxDOT, Payne specifically limited special defects to excavations or obstructions
on or near roadways. TxDOT contends Ms. Wardlaw was not on FM 1350; she was floating on the
river as it passed under the roadway; and only someone such as Ms. Wardlaw, floating on the river,
was likely to be sucked into the culvert and drown while entangled in any debris caught in the
culvert. 
            The Texas Supreme Court has stated as follows: 
. . . This Court has never squarely confronted whether a hazard located off the road
can (or can never) constitute a special defect, though we did note in Payne that some
courts of appeals have held certain off-road conditions to be special defects. 
However, as Payne clarified, “[w]hether on a road or near one,’ conditions can be
special defects like excavations or obstructions ‘only if they pose a threat to the
ordinary users of a particular roadway.” 
 
Beynon, 283 S.W.3d at 331 (quoting Payne, 838 S.W.2d 238 n.3). In Beynon, the plaintiff moved
his car to the far right side of the road, which had a steep pavement edge drop-off, because he saw
an oncoming vehicle approaching in the middle of the road. Id. at 330. The car’s right-side tires left
the asphalt, dropping “around eight inches” off the edge and into some loose gravel and grass. Id.
The car briefly climbed back onto the road, but the driver lost control, and the car slid sideways into
the grass where it was punctured by a seventeen-foot floodgate arm owned and maintained by
Denton County. The metal floodgate arm was unsecured and improperly pointed toward oncoming
traffic, with the tip of the arm about three feet from the edge of the roadway. The floodgate arm
pierced the driver’s side door, entered the backseat area where it severely injured a child’s leg, and
then passed through the floorboard beneath the child’s seat. Id. at 330-31. The Supreme Court held
the floodgate arm did not pose a threat to the ordinary users of the road or “prevent ordinary users
from traveling on the road (as opposed to skidding off the road).” Id. at 332. 
            Both in Payne and Beynon, the Supreme Court indicated the dangerous condition must pose
a threat to users of a roadway. In this case, Ms. Wardlaw was not a user of any roadway. Because
the condition of the culverts did not pose a threat to ordinary users of a particular roadway, we
conclude it “falls outside the [Tort Claims Act’s] narrow special-defect class as a matter of law.” 
See Beynon, 283 S.W.3d at 332. Accordingly, we affirm the plea to the jurisdiction in favor of
TxDOT on Wardlaw’s special defect claim.
CONCLUSION
            For these reasons, we overrule all issues on appeal and affirm the trial court’s judgment.
 
Sandee Bryan Marion, Justice