# Supreme Court of Texas

No. 21-0728

Daniel K. Christ and Nicole D. Salinas,

*Petitioners,*

v.

Texas Department of Transportation,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued October 27, 2022**

JUSTICE HUDDLE delivered the opinion of the Court.

While traveling through a roadway construction site, a motorcyclist and his passenger wife collided head-on with a vehicle that crossed into their lane. They sued several parties, including the Texas Department of Transportation (TxDOT), alleging premises liability based on the condition of the construction zone. In particular, they contend that the demarcation of opposing travel lanes with painted yellow stripes and buttons instead of the concrete barriers called for in the project's traffic control plan created an unreasonably dangerous

condition. We hold that the plaintiffs failed to raise a fact issue on whether the substitution of stripes and buttons for concrete barriers created such a condition. Accordingly, we affirm the court of appeals' judgment dismissing the claim against TxDOT.

## I. Background

On a late night, Daniel Christ and his wife, Nicole Salinas (together, the Christs), were riding their motorcycle through a construction zone on Bay Area Boulevard when they collided head-on with a vehicle that crossed into their lane.

TxDOT prepared the construction project's traffic control plan, which details changes to the road's layout during certain phases of the work.[1] The plan called for the placement of concrete barriers between the opposing travel lanes. But once construction was underway, TxDOT's contractor, Williams Brothers Construction Company, determined there was not enough space for the concrete barriers. Williams Brothers revised the traffic control plan, substituting painted yellow stripes and buttons for the concrete barriers, and emailed the revised plan to several individuals, including the consultant who managed the project for TxDOT. All agree that TxDOT never approved the revised plan in writing. But the parties dispute whether TxDOT orally approved the change. Williams Brothers contends that TxDOT

---

[1] A traffic control plan reflects the planned layout for the construction area and how traffic will move through or around the area during various phases of work. *See* TEX. DEP'T OF TRANSP., PROJECT DEVELOPMENT PROCESS MANUAL ch. 5, § 9 (July 2019), http://onlinemanuals.txdot.gov/txdotmanuals/pdp/index.htm (stating that a traffic control plan "consists of the . . . [s]equence of construction staging/phasing plan" and "should clearly show provisions to efficiently move users through or around a work zone").

gave oral approval, so it proceeded to place the yellow stripes and buttons between the lanes of opposing travel.

The Christs' accident occurred a few months later. They initially sued the driver of the other vehicle and its owner but later amended their petition to add Williams Brothers and TxDOT as defendants. TxDOT responded with a combined plea to the jurisdiction and no-evidence motion for summary judgment, arguing (1) it retained sovereign immunity under Section 101.056 of the Tort Claims Act because roadway-design decisions are discretionary,[2] and (2) the Christs failed to present evidence creating a fact issue on the elements of their premises-defect claim. The trial court denied TxDOT's plea and motion, and TxDOT filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

The court of appeals reversed and dismissed for want of jurisdiction. 644 S.W.3d 202, 212 (Tex. App.—Corpus Christi–Edinburg 2021). It first rejected the Christs' contention that a special defect existed for which TxDOT owed a duty to warn. *Id.* at 210–11; *see* TEX.

_____

[2] Section 101.056 of the Tort Claims Act, titled "Discretionary Powers," states:

This chapter does not apply to a claim based on:

    (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

    (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX. CIV. PRAC. & REM. CODE § 101.056.

3

CIV. PRAC. & REM. CODE §§ 101.022(b), .060(c). The court then held that Section 101.056's protection for TxDOT's discretionary design decisions included the discretion to orally modify the traffic control plan. 644 S.W.3d at 211. Thus, the court held TxDOT retained its immunity from suit. *Id.* at 212.

The Christs petitioned this Court for review. They contend the court of appeals erred in concluding no special defect had been shown. They also argue they adduced sufficient evidence to support a premises-defect claim. In addition, the Christs assert that the court of appeals erred in concluding TxDOT had discretion to alter the engineer-approved traffic control plan as it did. They concede that TxDOT enjoys discretion to design roadways but contend that once TxDOT reduced its traffic control plan to a written, engineer-sealed plan, the Engineering Practice Act precluded TxDOT from deviating from that plan absent a *written, engineer-sealed* modification. *See* TEX. OCC. CODE § 1001.401(b) (requiring engineers to place their seal on a plan, specification, plat, or report); *id.* § 1001.407 (barring a political subdivision from constructing a public work involving engineering without an engineer-prepared plan). In the Christs' view, the court of appeals wrongly classified TxDOT's modification as discretionary because the Engineering Practice Act curtailed TxDOT's discretion once its plan was reduced to writing and sealed by an engineer.

In response, TxDOT contends the Christs failed to raise a fact issue regarding the essential elements of their premises-defect claim, so we should conclude the Christs' suit is barred by immunity without addressing the effect of the Engineering Practice Act on TxDOT's

4

discretion. Alternatively, TxDOT argues the Engineering Practice Act does not curtail TxDOT's discretion, so sovereign immunity bars the Christs' suit regardless.

## II. Applicable Law

Generally, the State of Texas and its agencies retain sovereign immunity from suit unless the Legislature clearly and unambiguously waives it. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010). Because sovereign immunity implicates a trial court's subject-matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). "Whether a court has subject matter jurisdiction is a question of law . . . ." *Sampson*, 500 S.W.3d at 384.

The Tort Claims Act waives sovereign immunity for personal injuries caused by a condition of real property. TEX. CIV. PRAC. & REM. CODE §§ 101.021(2), .025(a). If a plaintiff's claim arises from a premises defect, then the government's duty is generally limited to "the duty that a private person owes to a licensee on private property." *Id.* § 101.022(a), (c). But this limitation on the government's duty does not apply to the duty to warn of special defects, a subset of premises defects likened to excavations or obstructions on roadways. *Id.* § 101.022(b); *see id.* § 101.060(c). For special defects, we have stated the government owes a duty to warn that is the same as a private landowner owes an invitee. *E.g.*, *Hayes*, 327 S.W.3d at 116 (citing TEX. CIV. PRAC. & REM. CODE § 101.022(b)).

5

Absent willful, wanton, or grossly negligent conduct, a plaintiff asserting a premises defect under the Tort Claims Act, whether treated as a licensee or invitee, must prove that "a condition of the premises created an unreasonable risk of harm" to the claimant.[3] *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). We have also framed this element as asking "[w]hether a specific condition is unreasonably dangerous." *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 (Tex. 2022). But there is no material difference as to the framing because "[a] condition is unreasonably dangerous if it presents an unreasonable risk of harm." *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007).

A condition creates an unreasonable risk of harm if "there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)). In determining whether a condition is unreasonably dangerous, we consider several factors including "whether the relevant condition was clearly marked, its size, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, and whether it was naturally occurring." *United Supermarkets*, 646 S.W.3d at 803. Another consideration is "[w]hether the condition met applicable safety

---

[3] We consider the elements of a common law premises-defect claim when determining whether a premises defect exists under the Tort Claims Act. *Sampson*, 500 S.W.3d at 387 (citing TEX. GOV'T CODE § 311.023(4)).

standards." *Martin v. Chick-Fil-A*, No. 14-13-00025-CV, 2014 WL 465851, at *4 (Tex. App.—Houston [14th Dist.] Feb. 4, 2014, no pet.) (citing *Brinson Ford*, 228 S.W.3d at 163).

Whether a condition is unreasonably dangerous is ordinarily a fact question. *United Supermarkets*, 646 S.W.3d at 802. However, this Court has held that certain innocuous or commonplace hazards are not unreasonably dangerous as a matter of law, particularly when they have not caused other injuries or been the subject of complaints. *See id.* For example, we concluded last term that a 3/4-inch divot in a parking lot was not unreasonably dangerous as a matter of law because small divots in pavement are commonplace and this divot did not yield any other complaints or injuries. *Id.* at 803. We have similarly held that a pedestrian ramp that extended beyond its handrails at its bottom did not pose an unreasonable risk of harm as a matter of law because the unrailed portion of the ramp met applicable safety standards, was outlined in yellow paint, rose only four inches above the sidewalk, and had not been the source of any complaints or reported injuries over a ten-year period. *Brinson Ford*, 228 S.W.3d at 162–63. And years earlier, we concluded a rug in a showroom did not pose an unreasonable risk of harm because there was no evidence that the rug was defective or unusual or that anybody had previously tripped on it. *Seideneck*, 451 S.W.2d at 754–55. These authorities reflect that a common condition is not unreasonably dangerous merely because it causes an injury.

Rather, to raise a fact issue as to whether a common condition may support a premises-defect claim, we have required a claimant to adduce evidence either of prior complaints or injuries or that some

7

surrounding circumstance transformed an everyday hazard into one measurably more likely to cause injury. *Compare H.E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218, 218–19 (Tex. 1999) (rejecting the plaintiff's claim that a grape display with railings on non-skid floors with mats and cones nearby posed an unreasonable risk of harm because "there is no evidence that the manner of display created an unreasonable risk"), *with Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 297 (Tex. 1983) (holding that reasonable jurors could conclude that a slanted, self-service bin holding grapes over a floor with no protective mat posed an unreasonable risk of harm).

A claimant seeking to invoke the Tort Claims Act's waiver of immunity for premises liability must also demonstrate that the governmental unit's acts were not discretionary. That is because Section 101.056 provides that the Act does not apply to a claim arising from a governmental unit's performance or nonperformance of an act if the law leaves performance or nonperformance to the governmental unit's discretion. TEX. CIV. PRAC. & REM. CODE § 101.056. We have repeatedly held that a governmental unit retains its sovereign immunity under Section 101.056 for a claim based on the design of a roadway, which we have described as an inherently discretionary function. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (concluding a highway "median's slope and the lack of safety features, such as barriers or guardrails, reflect discretionary decisions for which TxDOT retains immunity" under Section 101.056); *State v. San Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) ("Decisions about highway design and about what type of safety features to install are discretionary policy

8

decisions."); *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999) ("Design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions."), *abrogated in part on other grounds by Denton County v. Beynon*, 283 S.W.3d 329, 331 n.11 (Tex. 2009).

### III. Analysis

The parties urge different approaches to answering the ultimate sovereign-immunity issue this case presents. The Christs focus on the court of appeals' conclusion that Section 101.056 bars their claim against TxDOT. 644 S.W.3d at 211–12. They contend the Engineering Practice Act limited TxDOT's discretion to swap stripes and buttons for concrete barriers and thus Section 101.056 never comes into play. *See* TEX. OCC. CODE §§ 1001.401, .407. For its part, TxDOT contends that Section 101.056 is an "exception" to the Tort Claims Act's waiver of immunity. Thus, TxDOT argues, the Court should address Section 101.056 only if it first determines that the Christs adduced sufficient evidence of the elements of their premises-defect claim to invoke the waiver of immunity in Sections 101.021 and 101.022. *See, e.g.*, *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664–65 (Tex. 2019) (referring to Section 101.056 as "the discretionary function exception"). We agree with TxDOT on the antecedent issue: the Christs failed to raise a fact issue on an essential element of their premises-defect claim and thus failed to establish a waiver under the Tort Claims Act in the first instance. Because this failure disposes of the Christs' claim on familiar legal principles, we find it unnecessary to address the

9

novel question of how Section 101.056 and the Engineering Practice Act interact.

A plea to the jurisdiction may challenge the pleadings or the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226–27. TxDOT challenged the existence of jurisdictional facts in its combined plea to the jurisdiction and no-evidence motion for summary judgment. The trial court was thus required to "review the relevant evidence to determine whether a fact issue exists." *Hayes*, 327 S.W.3d at 116; *see also id.* ("[I]f the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law."). "[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228. So "we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor" if the evidence submitted implicates the merits of the case. *Sampson*, 500 S.W.3d at 384.

In the trial court, the Christs contended the unreasonably dangerous condition on the roadway was the absence of concrete barriers to demarcate opposing lanes of travel. Their response to TxDOT's combined plea and motion for summary judgment explained: "by failing to place a . . . concrete barrier . . . an exceedingly dangerous condition was created." This focus is unsurprising as all TxDOT's other design choices were included in the engineer-sealed traffic control plan and thus unquestionably would fall within Section 101.056's scope. *See, e.g., San Miguel*, 2 S.W.3d at 251 ("Decisions about highway design and about what type of safety features to install are discretionary policy

10

decisions."). The Christs effectively conceded the point in their response: "Plaintiffs are not suing TxDOT based upon its discretionary highway design. Instead, it is being sued because it willingly allowed its [traffic control plan] to be deviated from in a major way when such deviation made the construction zone where the collision occurred significantly, unjustifiably and unreasonably dangerous."

In this Court, the Christs' description of the condition that they contend was unreasonably dangerous is somewhat less precise. They describe the condition as "an entire roadway lane that is poorly marked with no physical separation at all, poorly lit, and placed in a chaotic construction zone where east and westbound lanes are poorly differentiated." They also contend the vehicle that collided with their motorcycle constituted a road hazard or obstruction. TxDOT, on the other hand, maintains that the use of painted yellow stripes and buttons instead of concrete barriers is the condition underlying the Christs' claim.

The Christs' assertion that the unreasonably dangerous condition about which they complain includes the other driver's vehicle, the site's lighting, and the purportedly chaotic nature of the site is untenable. For starters, the other vehicle cannot be the dangerous condition giving rise to their claim because we have held that "[a] fully operational motor vehicle, making an illegal movement . . . , is neither a defect in the highway premises nor an excavation or obstruction or similar condition." *State v. Burris*, 877 S.W.2d 298, 299 (Tex. 1994). And the Christs concede that every decision regarding the roadway's design, save the purported oral approval of stripes and buttons when the traffic control

11

plan called for concrete barriers, was a discretionary decision for which TxDOT retained immunity under Section 101.056. *See, e.g., Rodriguez*, 985 S.W.2d at 85 (acknowledging a governmental unit may not be sued for the design of roadways because it is a discretionary function). Thus, the lone aspect of the roadway's design that arguably could fall outside Section 101.056's scope is the use of painted stripes and buttons to separate the opposing lanes of traffic when the engineer-sealed traffic control plan called for concrete barriers.

We conclude that the Christs failed to raise a fact issue as to whether the use of painted stripes and buttons instead of concrete barriers created an unreasonably dangerous condition. There is no claim by the Christs, nor evidence to suggest, that the stripes and buttons themselves were defective in any respect. The only evidence about the condition of the stripes and buttons is the undisputed testimony from a Williams Brothers employee that the buttons were TxDOT approved, citing the Texas Manual on Uniform Traffic Control Devices. *See Brinson Ford*, 228 S.W.3d at 163 (concluding a ramp that met safety standards and was outlined in yellow striping was not unreasonably dangerous); *Seideneck*, 451 S.W.2d at 754–55 (concluding a rug was not unreasonably dangerous in part because it was not defective or unusual); *Martin*, 2014 WL 465851, at *5–6 (holding the plaintiff failed to establish that a parking block on which a child tripped was unreasonably dangerous when it was no different than other parking blocks).

Nor is there evidence that any other accident or injury occurred at the site or that TxDOT received any complaints about the stripes and

buttons in the months between their installation and the Christs' accident.  We have repeatedly cited the absence of complaints or reports of injuries in concluding that ordinary, commonplace hazards are not unreasonably dangerous conditions.  *See United Supermarkets*, 646 S.W.3d at 803 (highlighting that a small divot did not yield other complaints or injuries and concluding the divot did not pose an unreasonable risk of harm); *Brinson Ford*, 228 S.W.3d at 163 (noting the lack of previous injuries on a ramp or complaints about it and concluding that the ramp did not pose an unreasonable risk of harm); *Seideneck*, 451 S.W.2d at 754 ("There is no evidence in this record that during the time the rug had been on the floor anyone had previously tripped on it.").

The use of painted stripes and buttons to separate travel lanes on roadways is ordinary, commonplace, and standard engineering practice. *See* TEX. DEP'T OF TRANSP., TEXAS MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES §§ 3B.01, .11 (Oct. 2014), https://ftp.txdot.gov/ pub/txdot-info/trf/tmutcd/2011-rev-2/revision-2.pdf (describing myriad settings in which yellow stripes and buttons may be used to delineate opposing travel lanes).  And there is no evidence from which we can infer that some aspect of the construction site rendered the use of painted stripes and buttons more dangerous than usual, let alone unreasonably dangerous.  In *Brookshire Grocery Co. v. Taylor*, we concluded that a soft-drink dispenser was not unreasonably dangerous because there was no evidence the dispenser posed "a greater danger than one would ordinarily encounter with such dispensers, or that customers, though prone to spills, were any more prone around th[e] dispenser."  222 S.W.3d 406, 408 (Tex. 2006).  *Brookshire Grocery* distinguished *Corbin*

13

as an "exceptional case" where the store "admitted there was an 'unusually high risk associated with its grape display.'" *Id.* (quoting *Corbin*, 648 S.W.2d at 296). Following similar reasoning, we held a divot that was "profoundly *ordinary*" did not pose an unreasonable risk of harm as a matter of law. *United Supermarkets*, 646 S.W.3d at 803. As in those cases, nothing here suggests the use of stripes and buttons was any more dangerous than their use on other roads.

The Christs cite the other driver's testimony that the roadway's curve or layout and the lack of warnings were factors that led her to drive in the wrong travel lane. True, the yellow stripes and buttons were easier to cross over than concrete barriers. But "[a] condition is not unreasonably dangerous simply because it is not foolproof." *Brookshire Grocery*, 222 S.W.3d at 408. And whatever evidence the Christs may cite to suggest that TxDOT failed to exercise reasonable care, such as the alleged lack of adequate warning, is not evidence that the roadway itself was unreasonably dangerous. *See id.* ("Taylor's arguments that there should have been more mats and warning signs are relevant to her contention that Brookshire did not exercise reasonable care, but they are not evidence that the dispenser itself was unreasonably dangerous.").

Furthermore, the mere fact that the use of yellow stripes and buttons deviated from TxDOT's traffic control plan does not, standing alone, create a fact issue as to whether the resulting condition is unreasonably dangerous. Indeed, the traffic control plan could have called for stripes and buttons, and Williams Brothers might instead have placed concrete barriers. To raise a fact issue regarding the

14

existence of an unreasonably dangerous condition, more is needed. Even if one might contend that, all other things being equal, concrete barriers are a better method for demarcating lanes of opposing traffic, that contention is not evidence that the use of stripes and buttons created an *unreasonably* dangerous condition.

For these reasons, the Christs failed to raise a fact issue as to whether the use of yellow stripes and buttons on the roadway created an unreasonably dangerous condition.[4] Therefore, they failed to demonstrate a waiver of TxDOT's immunity under the Tort Claims Act.[5]

## IV. Conclusion

The evidence that Williams Brothers substituted standard TxDOT-approved painted stripes and buttons for concrete barriers does not alone raise a fact issue as to an essential element of the Christs' premises-defect claim: the existence of an unreasonably dangerous condition. Because the Christs failed to create a fact issue regarding this element of their premises-defect claim, they have not established a

---

[4] Because the existence of an unreasonably dangerous condition is an essential element of the Christs' claim regardless of whether the condition could be characterized as a special defect, we need not address that question.

[5] We do not suggest that the use of painted stripes and buttons could never create an unreasonably dangerous condition. There may be situations in which a roadway's stripes and buttons are defective or otherwise do not comply with applicable safety standards or in which others have previously complained about the particular manner in which stripes and buttons were used at a specific location. Or a plaintiff may present expert testimony describing how the particular use of stripes and buttons increased the risk of harm. *But see United Supermarkets*, 646 S.W.3d at 804 ("[E]xpert testimony does not create a fact issue as to whether a condition is unreasonably dangerous when undisputed, material facts demonstrate that it is not."). While the evidence presented here was insufficient, our decision should not be read to foreclose liability in every such case.

15

waiver of sovereign immunity under the Tort Claims Act. We affirm the judgment of the court of appeals dismissing the Christs' claim against TxDOT.

Rebeca A. Huddle<br>
Justice

**OPINION DELIVERED:** February 10, 2023